INVERNESS CORPORATION,
Plaintiff-Appellee,

v.

WHITEHALL LABORATORIES and
American Home Products
Corporation, Defendants-Appellants.

No. 1092, Docket 87–7209.

United States Court of Appeals,
Second Circuit.

Argued April 20, 1987.
Decided May 21, 1987.

Steven B. Pokotilow, New York City (Blum Kaplan, New York City, Laura E. Goldbard, Anita K. Yeung, of counsel), for plaintiff-appellee.

Michael J. Sweedler, New York City (Darby & Darby, New York City, Beverly B. Goodwin; American Home Products Corp., New York City, Egon E. Berg, Steven J. Baron, of counsel) for defendants-appellants.

Before LUMBARD, MESKILL and MAHONEY, Circuit Judges.

PER CURIAM:

This case once again demonstrates the need for the district courts to make findings of fact and conclusions of law sufficient to permit this court to review their decisions on appeal.

Defendants Whitehall Laboratories and American Home Products Corporation (collectively "Whitehall") appeal from an order, entered in the Southern District by Judge Kevin Thomas Duffy on March 3, 1987, preliminarily enjoining them from selling or distributing a new roll-on hair-remover in a particular container. Whitehall primarily claims that because the district court "failed to make the necessary findings to support its conclusion that [Inverness Corporation's] ONE TOUCH [depilatory] applicator is entitled to protection," the preliminary injunction should be vacated. Whitehall also attacks as an abuse of discretion Judge Duffy's decision to require only a $1,000 bond as security for the preliminary injunction; and argues that the district court's insistence on holding an evidentiary hearing on the preliminary injunction only three days after Whitehall received notice deprived it of a fair and adequate opportunity to be heard. We remand the case to the district court for a more complete statement of the court's findings of fact and conclusions of law. As we have every expectation that the district court will act with appropriate expedition, we leave the injunction as granted, pending further review, for which purpose we retain jurisdiction.

We briefly summarize the underlying dispute and the history of the case: In March, 1985, Inverness Corporation, a health and beauty aid manufacturer, introduced into the market a new hair-remover applicator under the tradename "ONE TOUCH." ONE TOUCH's unusual flat white container and cylindrical roller permit the user to grasp the container easily and to spread a wide band of depilatory liquid onto the skin, usually on the legs or underarms. The white applicator bears a label which employs either an aqua and white, or lavender and white color scheme and prominently displays a sitting woman. Transparent plastic sheeting attaches the applicator to an aqua or lavender backing card—a "temporary marketing device."

In the summer of 1985, Whitehall, which manufactures NEET, the second leading depilatory in the United States, approached Inverness about the possibility of Inverness manufacturing a similar product for Whitehall. Whitehall apparently became interested in Inverness's product after it obtained samples through normal commercial channels. The parties agree that no confidential relationship developed during these negotiations. When the talks between the two companies failed, Whitehall proceeded to develop and to manufacture its own product under its NEET label, using a similar product shape and a similar cylindrical roller head, covered by a transparent plastic cap. Whitehall's product retains the aqua and white, lavender and white, and brown and white color schemes traditionally used with the NEET product line, but neither uses a backing card nor bears a picture of a woman on its label; instead, its product clearly displays the NEET tradename.

After receiving a flyer advertising NEET's new product, Inverness filed suit in the Southern District on February 19, 1987, and on the same day served Whitehall with an order to show cause why a preliminary injunction should not issue, returnable the following Monday, February 23. On Monday, Whitehall appeared before Judge Duffy and objected that it would be deprived of an adequate opportunity to prepare its case if a hearing were held on that day. Judge Duffy offered to postpone the hearing, but stated that he would issue a temporary restraining order in the interim. Whitehall withdrew its objection and proceeded with the hearing as scheduled.

At its conclusion, Judge Duffy read into the record his three-page ruling. He concluded that Whitehall's product was "a knockoff [of Inverness's ONE TOUCH depilatory] with a few minor changes, and those features would not be functional nor distinctive." He continued: "A person buying the plaintiff's depilatory ... would be back to buy the One Touch roll-on depilatory in two months, but would not necessarily remember the name. There on the shelf is a well-known name with exactly the same trade dress. We have here the clear, clear opportunity for confusion." Also finding "no equity on the part of [Whitehall], none whatsoever," Judge Duffy granted Inverness's request for a preliminary injunction, over Whitehall's objection that the amount of the security bond—$1,000—was unreasonably low, and entered an order to that effect on March 3, 1987.

■ Rule 52(a) of the Federal Rules of Civil Procedure mandates that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." This rule serves two purposes relevant here: First, Rule 52(a) aids "the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court." 9 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 2571 at 679 (1971) (footnote omitted). *See also Lemelson v. Kellogg Co.*, 440 F.2d 986, 988

(2d Cir.1971). " 'Without this information the defendant is unable properly to exercise the appellate rights conferred by statute and the court is equally unable to make appropriate appellate review.' " *Fuchstadt v. United States*, 434 F.2d 367, 370 (2d Cir.1970), quoting *Alexander v. Nash-Kelvinator Corp.*, 261 F.2d 187, 191 (2d Cir. 1958).

■ Second, the rule also encourages the trial judge to ascertain the facts with due care and to render a decision in accord with the evidence and the law. Judge Frank explained: "as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on paper." *United States v. Forness*, 125 F.2d 928, 942 (2d Cir.), *cert. denied*, 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942). *See also* Nordbye, *Improvements in Statement of Findings of Fact and Conclusions of Law*, 1 F.R.D. 25, 25 (1940) ("A general verdict ... avoids the distressing embarrassment of facing the evidence, as both the Court and the jury must do."). Rule 52(a)'s requirement that the trial court find facts specially and state its conclusions of law is mandatory and cannot be waived. 9 C. Wright & A. Miller, *supra*, § 2574 at 690.

■ The district court neglected to make findings adequate to support the issuance of a preliminary injunction. A preliminary injunction may only issue when the moving party has shown (a) irreparable harm; and (b) either (i) a likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits to be a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *E.g., Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam). When determining a movant's likelihood of success on the merits in a trade dress infringement action, our decisions require a district court to examine the probability that the moving party will be able to show

that the dress of the competitor's product is confusingly similar to its own *and* that the trade dress of its product has acquired secondary meaning. *Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 974 (2d Cir. 1987) (citing cases). In addition, the district court must consider the likelihood that the non-moving party can explain the similar arrangement of features as functional, *id.*, at 974–79, a factor of particular significance in this case given Whitehall's contention that it copied Inverness's design rather than its trade dress.

■ The district court found that a clear likelihood of confusion exists here, even though Whitehall prominently labeled its product with its NEET trademark. Nevertheless, the district court's decision left unanswered several knotty questions—whether Inverness's trade dress had acquired secondary meaning; whether the similarities between the two products were functional; whether Inverness would suffer irreparable harm if the preliminary injunction were not issued. Inverness contends that we may construe the district court's decision as addressing each of these questions. We disagree. We cannot, without resorting to speculation, determine whether the district court considered these issues. Measured by the purposes of Rule 52(a), the district court's decision neither informs us as to its underlying rationale nor served to discipline its approach to the case before it.

In such circumstances, the only appropriate procedure is to remand the case to the district court for a explanation of its decision. *E.g., Lemelson, supra,* 440 F.2d at 988. We leave the preliminary injunction intact until the district court has had the opportunity to spell out its decision—a chore which, of course, we expect it to undertake with alacrity—as it would be inequitable to punish Inverness for the district court's failure to make specific findings where, on the record developed to date, there are sufficiently serious questions going to the merits to be a fair ground for litigation and a balance of hardships tipping decidedly toward Inverness. At the same time, Whitehall will have a further opportunity to address to the district court its arguments for increasing the amount of the security bond Inverness must post.

■ Whitehall also complains that the district court's insistence upon holding a hearing on the preliminary injunction only three days after Whitehall received notice of the action deprived it of its right to prepare fully and adequately for the hearing. *See* Fed.R.Civ.P. 65(a); *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 434 n. 7, 94 S.Ct. 1113, 1121 n. 7, 39 L.Ed.2d 435 (1974) ("The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition."). When Judge Duffy offered to postpone the hearing and to issue a temporary restraining order in the meantime, Whitehall withdrew its objection and proceeded with the hearing. Although Whitehall now characterizes its decision as a "Hobson's choice," this characterization misunderstands Rule 65(a). A temporary restraining order, which extends for only a finite duration, is not subject to the same notice requirements as is a preliminary injunction, which lasts for a potentially unlimited period. Therefore, Judge Duffy acted within his discretion in refusing to postpone the preliminary injunction hearing without protecting Inverness's interests in the interim; and Whitehall cannot now renege on its decision to proceed with the hearing.

We retain jurisdiction and remand to the district court for further proceedings consistent with this opinion.