**Marc ROSEN, on behalf of himself and all other stockholders of Morben Properties, Inc., Plaintiff–Appellant,**

**Albert Rosen, individually and as the executor of the Estate of Esther Rosen; and Marc Rosen, Defendants–Appellants,**

v.

**Martin SIEGEL; and Morben Properties, Inc., Defendants–Counter–Claimant–Appellees,**

**Paul Mobley; Winston Wellington; and Kenny Arthur, Defendants–Appellees.**

No. 704, Docket 96–7645.

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 1997.

Decided Jan. 28, 1997.

Ronald E. DePetris, DePetris & Bachrach, New York City (Marc L. Jordan, Clarksville, MD, of counsel), for Appellants.

Arnold P. Azarow, Garden City, NY, for Appellees.

Before: NEWMAN, Chief Judge, McLAUGHLIN, Circuit Judge, and SAND, District Judge.*

McLAUGHLIN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Eastern District of New York (David G. Trager, *Judge*), enjoining Appellants from "interfering with the management and operation" of Appellee corporation Morben Properties, Inc. ("Morben"), and denying Appellants' motion

---

for appointment of a receiver. For the reasons stated below, we affirm in part and remand to the district court for further proceedings.

## BACKGROUND

Morben is a closely held corporation that owns and manages eleven commercial properties in New York City. Its stock is principally divided between two families, who might have been the Montagues and Capulets, but are in fact the Siegels, who own a majority of the shares, and the Rosens, who own a significant minority. Martin Siegel is the president and chairman of the board of Morben and runs Morben's day-to-day business.

Marc Rosen, acting "on behalf of himself and all other stockholders of Morben," sued Morben, Siegel, and certain other individuals in the United States District Court for the Eastern District of New York. He alleged two "civil RICO" violations, see 18 U.S.C. §§ 1962, 1964(c): (1) that Siegel and his allies had engaged in a scheme to defraud Morben of rents on the properties; and (2) that Siegel had submitted false tax returns to the federal and state governments. Rosen asserted, for example, that Siegel had "officially" leased a Morben property to Winston Wellington for $700 per month, but that Wellington had turned around and subleased that property—with Siegel's knowledge and approval—to a third party for $2,400 per month. Wellington then paid only $700 per month to Morben, and split the difference with Siegel. Rosen sought over $2 million in damages, and asked the court to appoint a receiver to run Morben and account for all amounts due to and taxes payable by the corporation.

Siegel and Morben answered the complaint, and asserted various counterclaims. Siegel's version is that Rosen had unilaterally contacted a few Morben tenants, negotiated new leases without authority, and collected the rents for himself. Siegel asked the court for damages in an amount to be determined and for an injunction prohibiting Rosen, the minority shareholder, from "interfering" with Morben's operations. (Siegel then brought an action against Rosen in New York state court, alleging claims virtually identical to these counterclaims. Rosen removed the state-court action to the Eastern District of New York, and the district court then consolidated the two actions.)

After some discovery, Rosen formally moved for appointment of a receiver to run Morben. He based the motion primarily upon deposition testimony supporting his allegations of Siegel's rent-skimming scheme, but also mentioned that Siegel had an apparent conflict of interest in managing various Morben properties leased to the Mobil Oil Corporation ("Mobil"). Some of Morben's properties are occupied by Mobil under relatively unprofitable leases executed twenty-five years ago; Siegel personally owns some properties that he leases to Mobil. Rosen discovered that, while Siegel had allowed Mobil to occupy the Morben properties under the old leases, he had renegotiated Mobil's leases on his personal properties on a much more profitable basis.

At the end of an acrimonious hearing on Rosen's motion to appoint a receiver, the district court told the parties: "we don't have to spend money because of an unpleasant family dispute so you'll have money going to lawyers and receivers, when a little reason and sense of obligation to each other might save everybody a lot of heartache, and do well for everybody." The court denied Rosen's application for a receiver without prejudice to renewal and gave Siegel ninety days to negotiate new, more realistic leases with Mobil on the Morben properties. The court ordered Rosen—who had been in touch with Mobil about the properties and his lawsuit—not to contact Mobil during the ninety-day period.

When the parties returned to court after ninety days, Siegel had failed to get the new Mobil leases. With commendable patience, the district court instructed Siegel to continue working on the new leases and urged Rosen to secure alternate or competing offers from sources other than Mobil, after which the parties—with the court's help—would attempt to agree on appropriate leases for all the Morben properties, including those leased to tenants other than Mobil. The

court continued its prohibition on Rosen's contacting Mobil.

When the parties came before the district court again, Siegel had proposed leases for some of the properties, and Rosen had a few alternate offers secured through a broker. Rosen told the court that Siegel's proposed deals were unacceptable; Siegel replied that Rosen's alternate deals would never work. The court was obviously frustrated with Rosen, who it thought was being unreasonable, and had ignored some of the court's instructions. The court told the parties that:

> our meetings are essentially attempts to move forward and try to come to some reasonable resolution which would put money in the corporation, and then we would figure out some way to guide [sic] the baby so that you could each go your own way, but obviously [Rosen's attorney] doesn't think that's the approach.

> As far as I'm concerned the motion to appoint a receiver is denied, okay. It is denied straight out.

The district court castigated Rosen for contacting Mobil during Siegel's negotiations, in violation of the district court's instructions, and thus jeopardizing the chance of new, advantageous leases.

After that hearing, the district court entered a formal order denying Rosen's motion to appoint a receiver. Adopting a proposal submitted in a letter from Siegel, the court also enjoined Rosen, his attorneys, and "any other parties acting on [Rosen's] behalf" from "interfering with the management and operation of Morben."

Rosen now appeals, arguing that the district court erred by (1) issuing an overbroad injunction against him without notice, without a hearing, and without explicit findings of fact and conclusions of law; and (2) denying his motion for appointment of a receiver.

## DISCUSSION

### A. The Injunction

We review the district court's grant of a "preliminary" injunction for abuse of discretion.[1] *See Malkentzos v. DeBuono*, 102 F.3d 50, 54 (2d Cir.1996); *International Bhd. of Teamsters v. Local Union Number 810*, 19 F.3d 786, 789 (2d Cir.1994). There is such an abuse when the court "appl[ies] an incorrect legal standard or rel[ies] on a clearly erroneous finding of fact," *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996) (internal quotations omitted), or when it makes "an error in the substance or form of [its] order," *Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 315 (2d Cir.1982); *see also Malkentzos*, 102 F.3d at 54; *Polymer Tech. Corp. v. Mimran*, 975 F.2d 58, 61 (2d Cir.1992).

The Federal Rules of Civil Procedure prescribe a stylized ritual for the entry of a preliminary injunction. First, Rule 65 provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed.R.Civ.P. 65(a)(1).

> The purpose of this requirement is to give the opposing party a "fair opportunity to oppose the motion for a preliminary injunction," 7–Pt. 2 *Moore's Federal Practice* ¶ 65.04[3], at 65–81 (2d ed.1989), and the court must allow that party sufficient time to marshal his evidence and present his arguments against the issuance of the injunction, *see* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2949, at 468 (1973).

*Weitzman v. Stein*, 897 F.2d 653, 657 (2d Cir.1990); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 434 n. 7, 94 S.Ct. 1113, 1121 n. 7, 39 L.Ed.2d 435 (1974) ("The notice required by Rule 65(a) before a preliminary injunction can issue implies a hearing in which the [opposing

---

**1.** The district court's injunction is not preliminary in the traditional sense of an order that applies only during the interval between its issuance and a final hearing on whether the order should be made permanent. Siegel's complaint did not seek an injunction barring interference with Morben, and none of the parties indicates an expectation of a further hearing as to Siegel's entitlement to such an injunction. Moreover, the injunction is not limited in duration. Nevertheless, the usual requirements of notice and findings (as discussed below) remain applicable, although, if the injunction is "final," Siegel must show an entitlement to it, rather than merely a probability of success. *See Romer v. Green Point Sav. Bank*, 27 F.3d 12, 16 (2d Cir.1994); *Guinness–Harp Corp. v. Joseph Schlitz Brewing Corp.*, 613 F.2d 468, 471 (2d Cir.1980).

party] is given a fair opportunity to oppose the application and to prepare for such opposition."). "Compliance with rule 65(a)(1) is mandatory." *Parker v. Ryan,* 960 F.2d 543, 544 (5th Cir.1992).

■ Next, the court's injunction must "be specific in terms," and must "describe in reasonable detail ... the act or acts sought to be restrained." Fed.R.Civ.P. 65(d); *see also Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 52 (2d Cir.1996). This rule against broad, vague injunctions "is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed," and to be sure "that the appellate court knows precisely what it is reviewing." *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.,* 824 F.2d 665, 669 (8th Cir.1987).

■ Finally, the district court "in granting or refusing interlocutory injunctions shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed.R.Civ.P. 52(a); *see also* Fed.R.Civ.P. 65(d) ("Every order granting an injunction ... shall set forth the reasons for its issuance."). This requirement is essential to effective appellate review: absent explicit findings, we lack a " 'clear understanding of the ground or basis of the decision of the trial court.' " *Inverness Corp. v. Whitehall Labs.,* 819 F.2d 48, 50 (2d Cir.1987) (per curiam) (quoting 9 *Federal Practice and Procedure,* Civil § 2571 at 679 (1971)); *see also Weitzman,* 897 F.2d at 658; *Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940). It further "encourages the trial judge to ascertain the facts with due care and to render a decision in accord with the evidence and the law." *Inverness,* 819 F.2d at 50.

These procedural requirements were ignored. Siegel made neither a written nor an oral motion for an injunction; the district court apparently entered the injunction in response to Siegel's letter request. The court never told Rosen that it was considering an injunction. Thus, Rosen had no notice that an injunction might be entered against him, and no fair opportunity to oppose it.

The district court's injunction also creates some risk of leaving Rosen unaware of its scope, especially since it was entered during a period of trial preparation and some aspects of such preparation might be regarded as "interfering with the management and operation of Morben." Rosen is currently pursuing a lawsuit against Siegel and Morben where Mobil is a potential witness, and Rosen has expressed an understandable interest in speaking with Mobil representatives to prepare for trial. Yet, Rosen's contact with Mobil was presumably a key factor in the district court's decision to issue the injunction. Further contact might be deemed to violate the injunction. In these circumstances the injunction, if continued, should clarify whether "interfering" includes reasonable trial preparation steps and, if so, should specify the extent to which contact with potential witnesses is prohibited (or limited). Perhaps the court's concern to prohibit Rosen's "interfering" with Morben could be adequately met, without impairing trial preparation, by obliging Rosen to elicit pretrial information from actual or potential lessees of Morben only by written interrogatories.

■ Finally, there is a complete dearth of findings of fact and conclusions of law to support its injunction. To obtain a preliminary injunction, a party must "demonstrate[ ] (1) irreparable harm and (2) either (a) likelihood of success on the merits or (b) 'sufficiently serious questions' on the merits and a balance of hardships 'tipping decidedly' in the movant's favor." *Brooks v. Giuliani,* 84 F.3d 1454, 1462 (2d Cir.) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979)), *cert. denied sub nom. Brooks v. Pataki,* —— U.S. ——, 117 S.Ct. 480, 136 L.Ed.2d 375 (1996); *see also International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 (2d Cir.1996). Nowhere is there a discussion of the irreparable injury that Siegel or Morben would suffer in the absence of an injunction, or of Siegel's likelihood of success on the merits of any claim.[2] "Nor did the court even mention [this] standard for the granting of a preliminary injunction." *Weitzman,* 897 F.2d at 658. We are

---

2. If, as appears, the injunction is in reality a final injunction, then, as we have noted, the standard is even more rigorous than "probability of success."

left "unable to tell what standard the court was using and what facts it found to warrant that extraordinary, and unsolicited, relief." *Id.; see also Inverness,* 819 F.2d at 51 ("Measured by the purposes of Rule 52(a), the district court's decision neither informs us as to its underlying rationale nor served to discipline its approach to the case before it.").[3]

■ "In such circumstances, the only appropriate procedure is to remand the case to the district court for an explanation of its decision." *Inverness,* 819 F.2d at 51; *see also TEC Eng'g Corp. v. Budget Molders Supply, Inc.,* 82 F.3d 542, 545 (1st Cir.1996); *Allied Mktg. Group, Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 814 (5th Cir.1989).

In *Inverness,* we left the injunction intact during the remand, because it would have been "inequitable to punish [the movant] for the district court's failure to make specific findings." *See Inverness,* 819 F.2d at 51. True, we dealt in *Inverness* only with the court's failure to make specific findings, and not with the additional failure to give notice and opportunity to be heard. Nonetheless we think that a similar course—remanding the case but leaving the injunction intact—is warranted here.

While Rosen stridently contends that he has violated no district court orders or instructions and has always acted in good faith, the record casts these assertions in grave doubt. The district court's comments[4] at various conferences indicate that Rosen significantly undercut Siegel's attempts to renegotiate the Mobil leases. Of course, if Rosen was ignoring court orders and interfering with Morben's operations to the company's detriment, an injunction against Rosen might be proper. Thus, "we believe that the pertinent issues are close and that the evidence in

the record does not compel a ruling for either side," *TEC Eng'g,* 82 F.3d at 545; *see also Inverness,* 819 F.2d at 51, and we "cannot say at this point in time that the district court committed reversible error," *See Allied Mktg. Group,* 878 F.2d at 814.

Trial in this case is currently scheduled to begin on March 13, 1997, which is just several weeks from now. It would, of course, do Rosen little good to get his requested injunction hearing on the eve of trial—if Rosen successfully opposed the injunction, he would still have little time to contact Mobil in preparation for trial. Thus, we direct the district court to postpone the trial in this matter until such time as it may hold a hearing after notice to the parties, and issue sufficient findings of fact and conclusions of law to support (or deny) an injunction. If, after that hearing, the district court decides not to continue the injunction, it should afford Rosen a reasonable opportunity to conduct the discovery presently forbidden to him.

*B. The Failure to Appoint a Receiver*

Rosen also argues that the district court abused its discretion in rejecting Rosen's call for a receiver to run Morben. We disagree.

Preliminarily, we note that though an order denying appointment of a receiver is normally not subject to interlocutory appeal, *cf.* 28 U.S.C. § 1292(a)(2) (an order *appointing* a receiver is appealable), we will exercise pendent appellate jurisdiction in this case in order to eliminate any doubt as to the propriety of the district court's ruling, *see Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 449 (2d Cir.1995) (pendent appellate jurisdiction over unappealable related issues is discretionary).

■ A district court may appoint a receiver to manage a defendant's assets during litigation. *See In re McGaughey,* 24

---

**3.** Siegel attempts to justify the district court's injunction as an exercise of the court's "inherent authority" over litigation matters. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991). But this inherent authority does not free the court from the procedural requirements regarding injunctions. *See Weitzman,* 897 F.2d at 657.

**4.** The district court said, for example: (1) "[r]ight now I have a two-fold agenda: [o]ne,

that [Rosen's attorney] stop interfering with the operation of Morben;" (2) "by the way, I will put [Rosen] on notice, [that] there's New York law that talks about interfering with contracts;" (3) "what [Rosen and his attorney] can't do is to pull the tricks [and] the games that they've pulled;" and (4) "what [Rosen's attorney] did as far as I'm concerned undermined [Siegel's] effort [to renegotiate the Mobil leases]."

F.3d 904, 907 (7th Cir.1994). " '[T]he appointment of a receiver is considered to be an extraordinary remedy', and ... should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) (quoting *Chambers v. Blickle Ford Sales, Inc.*, 313 F.2d 252, 260 (2d Cir.1963)). We review a decision to appoint (or not to appoint) a receiver for an abuse of discretion. *See McGaughey*, 24 F.3d at 908; *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 317 (8th Cir.1993).

■ The district court did not abuse its discretion in refusing to appoint a receiver. Rosen's argument for appointment rests primarily upon Siegel's alleged conflict of interest in dealing with Mobil. The district court, mindful of this potential conflict, reminded Siegel of his fiduciary duty to Morben and ordered him to rework the Mobil leases on terms at least as advantageous as the leases Siegel had secured with Mobil on his own private holdings. The court remained quite involved with this renegotiation process and was able to gauge the degree of Siegel's effort and success. Given the court's detailed knowledge of the case, its decision not to appoint a receiver commands respect, as does its unfailing patience with these contentious parties.

## CONCLUSION

We AFFIRM the district court's denial of Rosen's motion for appointment of a receiver; and REMAND to the district court for further proceedings consistent with this opinion. The mandate shall issue forthwith.