Tony CLANTON, Petitioner–Appellant,

v.

UNITED STATES of America, Respondent–Appellee.

Docket No. 00–2190.

United States Court of Appeals, Second Circuit.

Argued May 2, 2001.

Decided March 20, 2002.

Philip R. Schatz, New York, NY; Wrobel Markham & Schatz, New York, New York, on the brief, for Petitioner–Appellant.

Emily Berger, Assistant United States Attorney, Brooklyn, NY; Loretta E. Lynch, United States Attorney for the Eastern District of New York, Peter A. Norling, Assistant United States Attorney, Brooklyn, New York, on the brief, for Respondent–Appellee.

Before: MESKILL and KEARSE, Circuit Judges, SQUATRITO, District Judge.*

Judge SQUATRITO concurs, in a separate opinion.

KEARSE, Circuit Judge.

Petitioner Tony Clanton, convicted of Hobbs Act and federal firearm offenses, appeals from orders of the United States District Court for the Eastern District of New York, Edward R. Korman, now-*Chief Judge*, (1) denying his petition pursuant to 28 U.S.C. § 2255 to vacate his conviction on the ground of, *inter alia*, ineffective assistance of counsel, and (2) denying his motion for reconsideration of that denial. The district court denied the § 2255 petition in a one-sentence order citing the reasons stated in the government's brief; it denied the motion for reconsideration for reasons endorsed on a letter submitted by the government in response to the reconsideration motion. On appeal, Clanton contends principally (a) that the district court's initial order simply adopting the government's arguments did not comply with the requirement of § 2255 that the court state its findings of fact and conclusions of law, and (b) that the form of the denial of reconsideration violated the precedents of this Court stating that it is inappropriate to decide a motion by endorsement on a party's briefs or other supporting or opposing papers. Although we find the district court's initial order troublesome, we conclude that any defect in the form or content of that initial decision was cured by the order resolving the motion for reconsideration. And because the placement of the latter order on papers submitted by the government caused Clanton no prejudice, we affirm.

## I. BACKGROUND

Clanton was arrested in 1997 after negotiating with an undercover police officer ("UC") for the sale of guns and, instead of selling guns, robbing the UC at gunpoint of the "buy" money and jewelry. When other officers approached, Clanton also attempted to shoot the UC. He was indicted on four counts, including two counts relat-

---

* Honorable Dominic J. Squatrito, of the United States District Court for the District of Connecticut, sitting by designation.

ing to his assault on the UC, one count of obstructing interstate commerce by robbery of the UC, in violation of the Hobbs Act, 18 U.S.C. § 1951, and one count of using a gun during and in relation to a crime of violence, to wit, the Hobbs Act offense, in violation of 18 U.S.C. § 924(c). Pursuant to a plea agreement with the government, Clanton pleaded guilty to the latter two counts, and the remaining counts were dismissed.

The presentence report ("PSR") prepared on Clanton calculated that, under the Sentencing Guidelines ("Guidelines"), his criminal history category was III, taking into account, *inter alia*, the fact that at the time of his federal offenses he was on probation following his conviction of state crimes. Clanton was sentenced principally to 97 months' imprisonment.

In his plea agreement, Clanton had agreed not to appeal his sentence if the prison term imposed was in the range of 93–101 months. Following imposition of the 97 month sentence, he attempted to appeal. Before he filed a brief, however, the government moved for summary affirmance, which was granted.

### A. *Clanton's Attempts To Vacate His Conviction Pursuant to § 2255*

In May 1999, Clanton petitioned under 28 U.S.C. § 2255 for an order vacating his convictions. His principal contentions were (a) that the inclusion in his criminal history category of a point for violation of his state probation was erroneous because when he was sentenced for the present offenses, the state authorities had not commenced probation violation proceedings against him; (b) that the indictment was vindictive because, after he failed to cooperate with the prosecutors, the government augmented the charges that had been asserted in the criminal complaint; and (c) that his attorney rendered consti-

tutionally ineffective assistance because he failed to make plausible pretrial motions and instead recommended a plea of guilty. The district court ordered the government to show cause within 60 days why Clanton's motion should not be granted; it granted Clanton 60 days from receipt of the government's response in which to file a reply.

By letter dated July 26, 1999, the government argued that Clanton's claims were meritless. (Letter from Assistant United States Attorney ("AUSA") Christopher J. Gunther to Judge Edward R. Korman dated July 26, 1999 ("July 26 Letter").) After describing the charges against Clanton, the investigation and events that led to those charges, and the calculation of his Guidelines criminal history category (*see* July 26 Letter at 1–3), the government argued that Clanton's attacks on the indictment and on his sentence were procedurally barred (*see id.* at 4–5), and that, in any event, his arguments were meritless (*see id.* at 5–6).

As to both the criminal-history-category challenge and the charge of a vindictive indictment, the government stated, first, that "Clanton cannot raise [these] claims for the first time in his petition because they should have been raised on direct appeal" (July 26 Letter at 4), and that they were "procedurally barred due to his failure to raise them on his direct appeal" (*id.*). The government argued also that Clanton's criminal-history-category challenge lacked merit because "[n]othing in the Sentencing Guidelines suggests that state authorities must actually commence violation proceedings before a defendant is subject to the 2 point enhancement for committing a crime while on release on probation." (*Id.* at 5.) The government argued that Clanton's challenge to the indictment was frivolous because it is common practice for the government to seek

additional charges when a case is presented to the grand jury. (*See id.*)

Finally, the government ·argued that Clanton's ineffective-assistance-of-counsel claim was based on an entirely "conclusory allegation":

Clanton's lone complaint with his attorney's performance is that the attorney did not file any motions on his behalf. But Clanton cannot identify any motion or application that would have been raised by a responsible attorney, much less a motion that would probably have changed the outcome of the prosecution. In effect, Clanton merely complains that defense counsel did not raise the same frivolous arguments set forth in Clanton's petition. Because no competent attorney would raise such arguments and because these arguments could not have affected the outcome of Clanton's case, the ineffective assistance claim must fail.

(*Id.* at 6.) Clanton filed a reply to the July 26 Letter on August 5, 1999. As to the government's argument that his ineffective-assistance-of-counsel claim was conclusory and that he had failed to identify any colorable motion that could have been raised by a responsible attorney, Clanton contended that his attorney should have made a jurisdictional challenge on the ground that there was an insufficient nexus between the robbery and interstate commerce.

In an Order dated August 12, 1999, filed on August 18, 1999 ("August 18 Order"), the district court denied Clanton's petition, stating only as follows: "The petition for a writ of habeas corpus is denied for the reasons stated in the letter/brief of the U.S. Attorney." August 18 Order.

Clanton promptly moved for reconsideration. Elaborating on his contention that his attorney should have made a motion challenging federal jurisdiction, he argued that he had neither sold nor intended to sell any guns, and that the undercover officer, with whom he had entered into the sham negotiations, had merely pretended to be a gun buyer. He argued that his offenses thus had no connection with interstate commerce, and that he therefore (a) could not be guilty of a Hobbs Act violation, and (b) could not be guilty of the alleged offense of using a firearm during and in relation to a Hobbs Act violation:

In this case, the individual who came to buy guns from the Petitioner was not a registered gun dealer by profession. Nor was Petitioner actually intending on selling any guns to him. The individual was *pretending* [*sic*] to be a gun buyer, and therefore his actions cannot affect interstate commerce one way of [*sic*] another.... [W]hen a government agent engages in a conspiratoral [*sic*] activity, such activity cannot be considered a consummated criminal act because the agent was only pretending to be doing a business. So, too, here, since the purported gun buyer was not actually serious about commerce, any delay or interruption of the purported transaction cannot effect [*sic*] interstate commerce, neither directly, nor indirectly. The Supreme Court has held that "the legitimate law enforcement function of crime prevention does not include the manufacturing of crime." *See Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958).

(Clanton Motion for Reconsideration dated August 20, 1999, at 2–3 (emphasis in original).) Clanton contended that his attorney should have moved to dismiss the indictment on the ground that Clanton's conduct was solely a local matter and that there was no federal jurisdiction.

The government responded to these arguments by stating, in pertinent part, as follows:

Clanton argues that the UC's status as an undercover purchaser of handguns is insufficient to meet the jurisdictional requirements of the Hobbs Act. This contention is frivolous. First, trafficking in handguns in New York State necessarily has an effect on interstate commerce because no handguns are manufactured in New York State. Second, the UC was demonstrably in the business of purchasing handguns, albeit in an undercover capacity. The UC was assigned to a [Bureau of Alcohol, Tobacco, and Firearms] task force for the specific purpose of making undercover gun buys. Indeed, Clanton sold the UC a handgun just a few days before the robbery. Third, the $2,100 that the UC brought to the site of the robbery was specifically earmarked for the intended purchase of three additional handguns from Clanton, as the UC would have testified and as taped conversations between the UC and Clanton confirm. In sum, Clanton depleted the UC's funds intended for the purchase of handguns that traveled in interstate commerce; the Hobbs Act requires nothing more.

Clanton also argues that the UC's status as a government agent somehow alters the commerce analysis. The Second Circuit rejected this very argument in *United States v. Jones,* 30 F.3d 276 ([2d Cir.]1994), which upheld Hobbs Act jurisdiction over the defendant's armed robbery of "buy money" from an undercover narcotics detective....

. . . . .

Accordingly, Clanton's counsel did not perform ineffectively by declining to pursue an attack on the indictment that was foreclosed by the settled law of this Circuit. To the contrary, in the face of the overwhelming case against Clanton, which featured the audiotaped armed robbery of an undercover officer, Clanton's attorney quite properly focused on negotiating a disposition of the case that spared Clanton a plea to the most serious attempted murder charges against him. In short, Clanton's counsel performed effectively.

(Letter from AUSA Gunther to Judge Korman dated September 20, 1999 ("September 20 Letter"), at 5–6.)

In an Order dated November 8, 1999, endorsed on the last page of the government's September 20 Letter ("Endorsed November Order"), the district court denied Clanton's motion for reconsideration, stating as follows:

The motion for reconsideration is denied for the reasons stated on page[s] 5–6 of this letter, and for the additional reason that the petitioner was guilty of the "included offense" of attempting to affect commerce. 18 U.S.C. § 1951. *See United States v. Jannotti,* 673 F.2d 578, 592, 592–593 (3d Cir.1982), c/d 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315.

Endorsed November Order.

B. *This Court's Issuance of a Certificate of Appealability*

Clanton moved in this Court for a certificate of appealability to permit him to appeal the decisions of the district court. Such a certificate is required by 28 U.S.C. § 2253(c), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214. We granted the certificate, outlining the following issues:

(1) whether the district court's one sentence dismissal of Clanton's 28 U.S.C. § 2255 motion "for the reasons stated in the letter/brief of the U.S. Attorney" complied with the requirements of § 2255, *see* 28 U.S.C. § 2255 (["t]he court shall ... determine the issues and make findings of fact and conclusions of

law with respect thereto"); and (2) whether the district court's memo endorsed denial of Clanton's motion for reconsideration complied with the requirements articulated by this Court in *Barrett v. United States,* 105 F.3d 793, 794–95 (2d Cir.1996) (per curiam) ("Although handwritten endorsement orders may be an expeditious method of disposing of a variety of motions, care must be taken, especially where a party is proceeding pro se, to ensure that the order and its consequences are communicated clearly.").

*Clanton v. United States,* No. 00–2190 (2d Cir. Nov. 1, 2000). Our certificate also noted that we had granted a certificate of appealability in another case "on the related issue of whether a district court may dismiss a 28 U.S.C. § 2254 petition without providing an order which indicates that the court conducted a thorough review and independent analysis of the petition. *See Rudenko v. Costello,* 286 F.3d 51 (2d Cir. 2002)." We appointed counsel to represent Clanton on this appeal.

## C. *Chief Judge Korman's Objection to the Certificate of Appealability*

In April 2001, Chief Judge Korman filed a Memorandum opposing this Court's issuance of a certificate of appealability. He stated:

> [I]t is my view that there is no basis for concluding that the summary denial of the petition means that the judge "failed to conduct a reasoned method of inquiry into relevant questions of fact and law," *Capellan v. Riley,* 975 F.2d 67, 71 (2d Cir.1992) (internal quotations and citation omitted)....

(Chief Judge Korman's Memorandum dated April 25, 2001, at 1). He also argued that the present certificate of appealability was erroneously granted in light of the Supreme Court's decision in *Slack v.*

*McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000):

> I call attention to a recent Supreme Court holding that suggests that the Court of Appeals erroneously granted the certificate of appealability in this case because it failed to find as a threshold matter that the *underlying petition* made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c). *Slack v. McDaniel,* 529 U.S. 473, 483–90, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

(Chief Judge Korman's Memorandum dated April 25, 2001, at 1 2 (emphasis in original)).

Chief Judge Korman's Memorandum was sent to this Court by District Judge David G. Trager in connection with our consideration of the 16 appeals consolidated *sub nom. Rudenko v. Costello,* 286 F.3d 51, and referred to in the certificate of appealability that was granted in the present case.

## II. DISCUSSION

On appeal, Clanton, limiting his substantive discussion to the claim of ineffective assistance of counsel for failing to file requested motions during the criminal prosecution, argues (1) that the district court's one-sentence denial of his § 2255 petition "for the reasons stated in [the government's] letter/brief" did not comport with either the requirements of that section or the precedents of this Court, and (2) that the court's endorsed denial of reconsideration violated the principle enunciated by this Court in *Barrett v. United States,* 105 F.3d 793, 794–95 (2d Cir.1996) (per curiam), which criticized the rendering of a decision by means of an endorsement on a party's brief or other supporting or opposing papers. Clanton asks that we reverse the district court's denial of his § 2255

motion and remand the matter "for a hearing on the petition, determination of the issues, and findings of fact and conclusions of law." (Clanton brief on appeal at 30.) The government, in opposition, asks that we affirm the denial of the § 2255 motion.

For the reasons that follow, we conclude that although the district court's initial one-sentence denial of the § 2255 petition was uninformative, the statements in the court's denial of the motion for reconsideration were sufficient to cure that deficiency. We also conclude that, as the court's endorsement of its denial of reconsideration on the government's letter did not cause Clanton any prejudice, the location of that endorsement does not provide a basis for appeal.

■ Preliminarily, however, we note our rejection of Chief Judge Korman's view that the certificate of appealability in this case was improvidently issued. In *Rudenko v. Costello*, 286 F.3d 51 (2d Cir.2002) ("*Rudenko*"), decided today with regard to denials of 16 petitions filed by state prisoners for habeas corpus under 28 U.S.C. § 2254, we discussed at some length the requirement that the district court, in deciding a case, provide an explanatory statement that is sufficient to reveal the rationale for its decision. That requirement is based on a number of institutional concerns, including the need of the court of appeals for sufficient information to conduct a meaningful appellate review of the district court's decision, and the need for sufficient information to apply the AEDPA standard for determining whether or not a disappointed habeas petitioner will even be granted a certificate of appealability allowing him to obtain appellate review. Those concerns were pertinent to the present case, and for the reasons stated in Parts II.A, B., C.2., C.3., and D. of *Rudenko*, we conclude that the granting of the present

certificate of appealability to Clanton was proper.

## A. *The District Court's Adoption of the State's Position*

■ A federal prisoner's motion to vacate his conviction is governed by 28 U.S.C. § 2255, which provides in part as follows:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. § 2255. We have interpreted the requirement that the court "make findings of fact and conclusions of law" as requiring the court to set out its findings. *See, e.g., Newfield v. United States*, 565 F.2d 203, 208 (2d Cir.1977) ("urg[ing] the district courts to include in their orders denying § 2255 motions more than a conclusion"); *see also Blankenship v. United States*, 159 F.3d 336, 337 (8th Cir.1998) ("the preferred practice would most certainly be for the district court to have enumerated its reasons for the summary dismissal"), *cert. denied*, 525 U.S. 1090, 119 S.Ct. 844, 142 L.Ed.2d 699 (1999); *United States v. Counts*, 691 F.2d 348, 349 (7th Cir.1982) ("the preferred practice in dismissing a section 2255 motion ... is to enumerate the issues raised by the movant, specify that each is being summarily dismissed ... and explain the legal grounds for that action.").

Such a requirement serves several critical functions. First, it aids the court of appeals in its review in the event of an appeal, *see generally, In re Luis Electrical Contracting Corp.*, 917 F.2d 713, 716 (2d Cir.1990) ("[o]ne purpose of [Federal Rule

of Civil Procedure 52 which requires the court to set out either orally or in writing its findings and conclusions] is to enable an appellate court to understand clearly the basis of the decision below"); *United States v. Flores,* 135 F.3d 1000, 1002, 1007 n. 23 (5th Cir.1998) ("in denying section 2255 motions, district courts should state the findings and conclusions upon which their rulings are based . . . .because explanation of their rulings is always helpful, and occasionally indispensable, to appellate review."). Second, it informs the parties of the basis for the court's decision and thereby helps them decide whether to appeal and what grounds to assert on that appeal, *see generally Inverness Corp. v. Whitehall Laboratories,* 819 F.2d 48, 50 (2d Cir.1987) ("[w]ithout [findings by the district court] the defendant is unable properly to exercise the appellate rights conferred by statute"); *Newfield v. United States,* 565 F.2d at 208 ("[a] memorandum setting forth the reasons for denying a § 2255 motion and not holding a hearing would aid this Court in its deliberation, and would inform petitioners more fully as to the nature of the disposition of their claims and assist them in determining whether, and on what grounds, to appeal the decision"). Third, it encourages more considered determinations by the district court, *see Inverness Corp. v. Whitehall Laboratories,* 819 F.2d at 50 ("[T]he rule also encourages the trial judge to ascertain the facts with due care and to render a decision in accord with the evidence and the law. Judge Frank explained: 'as every judge knows, to set down in precise words the facts as he finds them is the best way to avoid carelessness in the discharge of that duty: Often a strong impression that, on the basis of the evidence, the facts are thus-and-so gives way when it comes to expressing that impression on

paper.' " (quoting *United States v. Forness,* 125 F.2d 928, 942 (2d Cir.), *cert. denied,* 316 U.S. 694, 62 S.Ct. 1293, 86 L.Ed. 1764 (1942)) (other internal quotation marks omitted)). *See also Rudenko,* 286 F.3d at 64–68 (2d Cir.2002).

In the present case, the district court, although determining that Clanton's petition should not be summarily denied, *see* Order to Show Cause dated May 12, 1999, denied the petition in a one-sentence order that relied entirely on the July 26 Letter from the government. The wholesale adoption of that letter, without explication, was particularly troublesome because although the government's July 26 Letter argued that Clanton had failed to identify any motion or application that would have been raised by a responsible attorney, Clanton in reply pointed out that his attorney should have made a jurisdictional challenge on the ground that there was an insufficient nexus between the robbery and interstate commerce. In denying habeas solely on the basis of the government's July 26 Letter, the district court's August 18 Order gave no indication that the court had considered, or even was aware of, of Clanton's reply.

Although that initial decision thus causes us concern, we nonetheless conclude that there need be no remand for further consideration or explanation because the district court did eventually address all of Clanton's additional contentions in its Endorsed November Order. And although that disposition too was quite brief, and relied principally on the government's papers, its additional content and greater specificity persuade us that the district court considered all of Clanton's contentions, found no material factual issue requiring a hearing, and found them to be without merit.

■ Although, as discussed in *Rudenko*, we have disapproved of the practice of adopting wholesale and without explanation the arguments or findings of one of the parties, the Endorsed November Order, focused on a particular part of the government's September 20 Letter. Thus, in rejecting Clanton's claim that his counsel should have made a jurisdictional challenge, the court adopted the reasons stated on pages 5–6 of that letter. The court also, citing *United States v. Jannotti*, 673 F.2d 578, 592–93 (3d Cir.), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982), added its view that Clanton was surely guilty of an attempt to affect commerce.

The particularity of the Endorsed November Order distinguishes this case from the orders addressed in *Rudenko*. The consolidated *Rudenko* appeals challenged habeas denials in which most of the district court's orders consisted solely of adoptions of ambiguous state-court affirmances of the petitioners' convictions and adoptions of the respondent's multi-layered memoranda of law filed in opposition to the habeas petitions. Those orders adopted the state-court affirmances and the respondent's memoranda of law in their entirety, without specification of which of the proffered alternative grounds for decision the district court was adopting with respect to which of the habeas petitioner's claims. We concluded that those adoptions left this Court unable to conduct a meaningful analysis of the district court's decision, whether in considering a motion for a certificate of appealability or in ultimately reviewing the merits of the decision after such a certificate is granted. In the present case, the narrowly focused reference to the government's position, and the court's independent citation of an additional reason for denying the motion for reconsideration, provide a sufficient basis for review by this Court and for an assess-

ment as to whether a certificate of appealability should be issued permitting Clanton to challenge the merits of the dismissal. Accordingly, we conclude that the form of the district court's decision does not require a remand for a further elaboration of the court's reasoning.

### B. *The Location of the Endorsement*

■ Nor are we persuaded that a remand is required because the district court placed its endorsed denial of Clanton's motion for reconsideration on the government's letter in opposition to that motion. In *Barrett v. United States*, we expressed our concern over the district court's method of handling Barrett's motions in connection with his § 2255 petition. The court had repeatedly made handwritten rulings on government papers; and one such ruling was made before the expiration of Barrett's time to respond. We stated that

[a]lthough handwritten endorsement orders may be an expeditious method of disposing of a variety of motions, care must be taken, especially where a party is proceeding pro se, to ensure that the order and its consequences are communicated clearly. That clarity can best be achieved if the endorsement (which may be either handwritten or typed) is placed on the face or the back of the notice of motion, and includes a clear statement of the disposition, such as "Summary judgment granted."

*Id.* at 795. The seemingly informal nature of the court's rulings did not sufficiently communicate to Barrett, proceeding *pro se*, the effect on his time to appeal. We also noted that "an endorsement placed upon briefs or other supporting or opposing papers threatens the appearance of justice so essential to public confidence in the judicial process." *Id.* We nonetheless concluded that the inappropriate handling of Barrett's motions had not caused him

any prejudice, so long as the district court treated a subsequent motion, which Barrett requested the court to treated as an appeal, as a notice of appeal. *See id.* at 795–96.

In the present case, the Endorsed November Order was a handwritten notation on the last page of the government's September 20 Letter. Although that disposition failed to conform to this Court's urging in *Barrett,* any error in its location was harmless. Clanton acknowledges on this appeal that he suffered no prejudice as a result of the location of the endorsement. *See* Clanton Brief on Appeal at 28. Thus, while we agree with Clanton that the endorsements here on the government's submissions implicated "the concerns identified in *Barrett* that rulings not appear partial," *id.,* we see no basis for reversal. We continue to urge the district courts to follow the procedures suggested in *Barrett.*

## CONCLUSION

We have considered all of Clanton's arguments on this appeal and have found in them no basis for reversal. The judgment of the district court is affirmed.

SQUATRITO, District Judge, concurring in the judgment.

I concur with the majority's disposition of this appeal because the district court's dismissal of Clanton's 28 U.S.C. § 2255 motion complied with the requirements of § 2255 and *Barrett v. United States,* 105 F.3d 793 (2d Cir.1996). I write separately to disagree, respectfully, with the suggestion that adopting a litigant's entire memorandum of law and incorporating it by reference in a judicial ruling inhibits effective appellate review of that decision. *See Majority Op.,* at 427–28.

The majority indicates that when a district judge adopts a litigant's proffered legal analysis by way of a general endorsement, the appellate court is unable to distinguish between the arguments the district court adopted and those it rejected. *Id.* I believe that this concern flows from the assumption that a judge who adopts a litigant's memorandum without specifying which of the arguments are meritorious intends to limit such adoption only to those arguments which will withstand appellate review. If that were the case, such a practice would hinder the appellate process by burdening the court of appeals with the responsibility of sifting through the briefs to decide "which of the proffered alternative grounds for decision the district court was adopting." *Id.* When an endorsement refers to extrinsic arguments without specificity, however, the presumption should be that the district court did not intend to limit the arguments which it adopted.

It is the duty of the district court to specify the extent to which it is relying upon a litigant's brief. Chief Judge Korman did this by identifying and incorporating only those arguments contained on pages 5–6 of the government's letter-brief. If, however, the district court does not in some way limit such an endorsement, then it should be deemed to have incorporated all of the arguments contained in the referenced brief. It is of no consequence that some of the arguments may be incorrect. When a judge adopts a litigant's memorandum of law, either in whole or in part, that judge is implicitly saying "I agree with what is written therein, and were I to elaborate on the rationale I employed in reaching this decision, I would reiterate the arguments contained in that memo." Under these circumstances, then, I cannot agree with the proposition that the practice of relying on a litigant's memorandum (or on a state court decision, as the district

court did, in part, in *Rudenko*) invariably inhibits effective appellate review.

I do not mean to suggest that extrinsic legal analysis incorporated by reference into a court's decision will always suffice to explain a district court's rationale. There may be instances where the appellate court must remand for clarification because the referenced material is devoid of reasoning sufficient to allow for adequate appellate review. Those circumstances, however, do not warrant a blanket policy prohibiting the adoption of memoranda in their entirety when those memoranda do provide sufficient legal reasoning.

As for the argument that it is not sound judicial practice to adopt wholesale the memoranda of a litigant, lest the unsuccessful party feel deprived of judicial neutrality, I express no opinion on the matter. Given our disposition of this appeal, I believe any such statement would amount to unnecessary dicta. The issue before this panel is whether the procedure employed by the district court complies with the requirements of 28 U.S.C. § 2255 and *Barrett v. United States.* For the aforementioned reasons, I believe that it does.

In sum, insofar as a reader reasonably can ascertain the rationale employed by the district court in rendering a decision on an issue, I believe that all of the concerns articulated in the majority's opinion and in *Rudenko* are assuaged. Here, the district court clearly referred all readers of its endorsement order to the reasoning found on pages 5–6 of the government's memorandum, and the location of the order did not prejudice Clanton in any way. Therefore, I concur with the majority in affirming the judgment of the district court.