USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-1975 TEC ENGINEERING CORP., Plaintiff, Appellee, v. BUDGET MOLDERS SUPPLY, INC. AND PLASTIC PROCESS EQUIPMENT, INC., Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Nathaniel M. Gorton, U.S. District Judge] ___________________ ____________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ____________________ Louis M. Ciavarra with whom Barry A. Bachrach and Bowditch & __________________ ___________________ __________ Dewey were on brief for appellants. _____ James C. Donnelly, Jr. with whom Charles B. Straus, III and ________________________ ________________________ Mirick, O'Connell, Demallie & Lougee were on brief for appellee. ____________________________________ ____________________ April 30, 1996 ____________________ STAHL, Circuit Judge. Budget Molders Supply, Inc., STAHL, Circuit Judge. _____________ and Plastic Process Equipment, Inc., (collectively "Budget") appeal from a preliminary order enjoining them from manufacturing, marketing or distributing certain industrial conveyors alleged to be confusingly similar to conveyors manufactured and sold by appellee, TEC Engineering Corp. ("TEC"). Because the district court failed to make findings of fact and conclusions of law sufficient to support its decision as required by Fed. R. Civ. P. 52(a), we modify the injunction and remand for further proceedings. I. I. __ Background1 Background __________ TEC manufactures a series of conveyors under the model name "Ultraline," which it markets primarily to the plastics processing industry. The conveyors are generally used to transport lightweight plastic products from molding machines in which they are formed to other machines for packaging. TEC sells the Ultraline conveyors under the TEC name through independent sales representatives. In addition, TEC authorizes an independent distributor, Injection Molders Supply, Inc. ("IMS"), to advertise, promote and sell  ____________________ 1. Our recitation of the facts is hampered by the district court's failure to make any findings in issuing the injunction. To provide context, we draw the following statement from what we perceive as essentially undisputed facts. The statement is not intended to be binding on the district court.  -2- 2 Ultraline conveyors under the IMS tradename through IMS's own product catalogues. In 1994, combined domestic and international sales of Ultraline conveyors exceeded 2,000 units, generating revenues of approximately $3 million. Budget has competed with TEC and other conveyor manufacturers in the plastics processing industry market for over five years. Budget markets its conveyors exclusively  through direct-catalogue sales. About January 1995, Budget decided to modify the design of its primary line of conveyors. Consequently, Budget soon began to market a redesigned conveyor under the "Supraline" model name that closely resembled TEC's Ultraline conveyor. Budget labels each Supraline conveyor with the name "Budget Molders Supply, Inc." in several different places on the machine. While these Budget labels cannot be seen in every advertisement photograph of a Supraline conveyor included in the record, each Supraline advertisement prominently features the Budget name (although not necessarily on the pictured conveyor), and several include the statement "Made in the USA by Budget." It appears largely undisputed that the two conveyors, when placed side by side, are strikingly similar in appearance. Many of the similarities shared by the two machines, however, are to some extent functional. In addition, the record includes several advertisements for conveyors sold by companies other than TEC or Budget. These -3- 3 conveyors, at least as they are presented in the advertisements, also appear somewhat similar to the Ultraline and Supraline conveyors. Moreover, apparently several companies other than TEC or Budget incorporate the suffix "line" in the model names of their respective conveyors. Budget notes that, in addition to "Ultraline" and "Supraline," other model names for conveyors marketed to the plastics processing industry include "A-line," "Flex-line," "Slim-line," "Omni-line," and "Direct-line." On July 12, 1995, TEC brought this action for trademark infringement under section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). In its complaint, TEC alleges, inter _____ alia, that the trade dress of its Ultraline conveyors is a ____ well-established mark in the industry and that, by developing and marketing its Supraline conveyors, Budget intended to exploit the goodwill associated with that trade dress. On July 21, 1995, the district court held a hearing on TEC's request for preliminary injunctive relief. At the hearing, an Ultraline and a Supraline conveyor were made available to the district court for review. At the close of the hearing, the court indicated that "it believed the products are confusingly similar" and that, therefore, it was "inclined to enter some sort of injunctive relief." Nonetheless, the court declined to enter a ruling at that time and urged the parties to resolve the -4- 4 matter themselves. Eventually, on August 1, 1995, the districtcourt enteredan orderenjoiningBudget from,inter alia, _____ ____ manufacturing, distributing, promoting, advertising, and/or selling: 1) the horizontal, inclined and variable inclined Budget Supraline Conveyors; and 2) any other conveyor which is likely to cause confusion or mistake in the minds of the public or to deceive purchasers into the belief that the defendant's goods are the plaintiff's goods or are affiliated with or sponsored by the plaintiff.2  Budget now appeals from this order. II. II. ___ Discussion Discussion __________ In ruling on a preliminary injunction motion, a district court must ask whether the moving party has established that (1) it has a substantial likelihood of success on the merits, (2) there exists, absent the injunction, a significant risk of irreparable harm, (3) the balance of hardships tilts in its favor, and (4) granting the injunction will not negatively affect the public interest. See, e.g., Hypertherm, Inc. v. Precision Prods., Inc., 832 ___ ____ ________________ _______________________ F.2d 697, 699 n.2 (1st Cir. 1987). Though the district court  ____________________ 2. The order also enjoins Budget "from producing and/or distributing . . . any advertising or promotional materials which depict the Supraline Conveyor or any other product which is confusingly similar to the Ultraline Conveyor." -5- 5 enjoys considerable discretion in applying this test, its decision to grant or deny a preliminary injunction must be supported by adequate findings of fact and conclusions of law. See Fed. R. Civ. P. 52(a); Knapp Shoes, Inc. v. ___ __________________ Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1228 (1st Cir. 1994). ________________________ The requirements of Rule 52(a) are intended to assure that the district court gives appropriate consideration to all essential relevant factors and provides an adequate basis for meaningful appellate review of its decision. See generally 9A Charles A. Wright & Arthur R. ___ _________ Miller, Federal Practice and Procedure 2751, at 478-80 (2d ______________________________ ed. 1994). The rule, however, is not intended to change the preliminary nature of the proceeding; in the context of a preliminary injunction motion, the district court's findings need not be overly detailed, and they do not bind the court in subsequent proceedings. See Aoude v. Mobil Oil Corp., 862 ___ _____ _______________ F.2d 890, 895 (1st Cir. 1988). Moreover, the absence of Rule 52(a) findings and conclusions will not be fatal in all cases. We may overlook the defect, if our own review of the record substantially eliminates all reasonable doubt as to the basis of the district court's decision. See New ___ ___ Hampshire Motor Transp. Assoc. v. Flynn, 751 F.2d 43, 47 (1st ______________________________ _____ Cir. 1984) (citing Pullman-Standard v. Swint, 456 U.S. 273, ________________ _____ 292 (1982)); Conservation Law Found., Inc. v. Busey, Nos. 92- _____________________________ _____ -6- 6 1335, 1464, 95-1019, 1020, 1047, 1048, slip op. at 48-49 (1st Cir. April 2, 1996) (failure to adhere to requirements of Rule 52(a) is harmless error where undisputed documentary evidence combined with district court's extensive discussion of other findings and conclusions adequately clarifies otherwise unexplained finding of irreparable harm). In this case, the district court made no explicit findings of fact or conclusions of law in granting TEC's request for a preliminary injunction. In its three-page written order, the court merely recited the traditional four- prong preliminary injunction test and summarily stated that TEC had met its burden in establishing it. The transcript of the relatively brief hearing on TEC's motion, provides little further insight into the district court's reasoning. The total extent of the court's oral findings following the hearing is limited to its statement that "it believed the two products were confusingly similar." In the context of this case, such minimal findings do not provide an adequate basis for appellate review. Moreover, our own review of the relatively sparse record does not allow us to affirm the district court's order in the absence of Rule 52(a) findings. Suffice it to say, we believe that the pertinent issues are close and that the evidence in the record does not compel a ruling for either side. Indeed, in a case such as this one, where a proper -7- 7 evaluation of the plaintiff's claim requires a careful balancing of a number of nondispositive factors by the district court, the absence of any subsidiary findings of fact or conclusions of law renders it virtually impossible for this court to do anything but speculate as to the basis of the district court's ruling. Accordingly, because we are unable to engage in meaningful appellate review, we remand the case to the district court for further findings of fact and conclusions of law. See Allied Mktg. Group, Inc. v. CDL ___ _________________________ ___ Mktg., Inc., 878 F.2d 806, 813-14 (5th Cir. 1989) (remand for ___________ findings in trade dress infringement action); Inverness Corp. _______________ v. Whitehall Labs., 819 F.2d 48, 50-51 (2d Cir. 1987) (same); _______________ cf. Knapp Shoes, 15 F.3d at 1228-29 (decision to dissolve ___ ___________ preliminary injunction in unfair competition case vacated for lack of detailed findings). On remand, the district court will have to apply the four-part preliminary injunction test and set forth the basis for its ruling on each prong. In this case, TEC alleges that Budget has impermissibly copied the trade dress of its Ultraline conveyor in violation of section 43(a) of the Lanham Act, 15 U.S.C. 1125(a). To establish such a violation, TEC must prove (1) that its design is inherently distinctive or has acquired a secondary meaning, and (2) that there is a likelihood that prospective purchasers of conveyors will be confused as to the source of the Budget conveyor. See Two Pesos, Inc. v. Taco Cabana, ___ _______________ _____________ -8- 8 Inc., 505 U.S. 763, 769 (1992); Mana Prods., Inc. v. Columbia ____ _________________ ________ Cosmetics Mfg., Inc., 65 F.3d 1063, 1068 (2d Cir. 1995); _____________________ Duraco Prods., Inc. v. Joy Plastics Enters., Ltd., 40 F.3d ____________________ ___________________________ 1431, 1439 (3d Cir. 1994). Whether a violation ultimately exists will also depend on the functionality of the copied design. See Two Pesos, 505 U.S. at 769.3 In addressing ___ _________ TEC's likelihood of success, the district court should make subsidiary findings of fact and conclusions of law sufficient to explain its evaluation of the evidence with respect to each of these three factors. Furthermore, we think that on remand the district court should also give specific consideration to Budget's claim that, even if the injunction was rightly entered, the second paragraph is overbroad. Similar language has been disapproved in John H. Harland Co. v. Clarke Checks, Inc., ____________________ ____________________ 711 F.2d 966, 984-85 (11th Cir. 1983). See also 1 J. ___ ____ McCarthy, Trademarks and Unfair Competition 8.01[1][c] ____________________________________ (1995). There is no compelling reason for us to resolve the  ____________________ 3. We find it unnecessary to decide at this juncture whether functionality is an element of the plaintiff's claim or an affirmative defense to be raised by the defendant. See ___ Fisher Stoves, Inc. v. All Nighter Stove Works, Inc., 626 ____________________ _______________________________ F.2d 193, 196 (1st Cir. 1980) (assuming arguendo that ________ defendant bears burden to prove functionality); see also 3 ___ ____ Louis Altman, Callman on Unfair Competition Trademarks and _______________________________________________ Monopolies 19.33 (4th ed. 1994) (discussing split in __________ circuits on whether functionality is an affirmative defense). In either event, we think it is a factor that the district court should consider in ruling on the preliminary injunction. -9- 9 issue at this time, and we express no view on the merits of this overbreadth claim. III. III. ____ Conclusion Conclusion __________ For the foregoing reasons, we remand the case to the district court for further findings of fact and conclusions of law consistent with this opinion. For the moment, we leave the preliminary injunction in place, but modify the order such that the injunction will expire two months from the issuance of this court's mandate, absent further action by the district court. See Allied Mktg., 878 ___ ____________ F.2d at 814. So ordered. So ordered. ___________ -10- 10