**ACCUSOFT CORPORATION, Plaintiff,**

v.

**MATTEL, INC., Defendant.**

**Civil Action No. 00–40049–NMG.**

United States District Court,
D. Massachusetts.

Oct. 6, 2000.

Louis M. Ciavarra, David M. Ianelli, Bowditch & Dewey, Worcester, MA, for plaintiff.

Timothy P. Wickstrom, Tashjian, Simsarian & Wickstrom, Worcester, MA, Irwin B. Schwartz, Schwartz and Nystrom, LLC Boston, MA, for defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

On March 21, 2000, plaintiff, AccuSoft Corporation ("AccuSoft") filed a Complaint against defendant, Mattel, Inc. ("Mattel"), alleging 1) copyright infringement in violation of the United States Copyright Act ("the Copyright Act"), 17 U.S.C. § 106, 2) breach of contract, and 3) unfair business practices in violation of M.G.L. c. 93A, § 11.

In addition to its Complaint, plaintiff filed, pursuant to Fed.R.Civ.P. 65, a motion for a preliminary injunction seeking to enjoin Mattel from using ImageGear, a computer software program written and copyrighted by AccuSoft. On September 6, 2000, this Court granted AccuSoft injunctive relief and entered a preliminary injunction.

Mattel has filed a motion to stay that injunction pending appeal to the First Circuit Court of Appeals. It argues, *inter alia*, that the preliminary injunction lacks specific findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). Following are findings of fact and conclusions of law in support of the entered injunction.

## I. Findings of Fact

1. AccuSoft manufactures a toolkit for computer programmers known as Image-Gear. AccuSoft registered ImageGear with the United States Copyright Office in or about June of 1996, and obtained a Certificate of Copyright, No. TX 4–311–850.

2. In March, 1996, AccuSoft entered into a license agreement ("the License") with Broderbund Software, Inc. ("Broderbund") which was amended in September, 1996. The License provided that 1) Broderbund could use ImageGear in the development of two of its own products, specifically the Print Shop and Park Row applications, 2) the License inured to the benefit of and was binding upon the parties' successors and legal heirs, and 3) any assignment of rights to a third party under the License required the written consent of AccuSoft.

3. In August, 1998, Broderbund was acquired by The Learning Company and became a wholly owned subsidiary thereof. Later in 1998, Mattel acquired The Learning Company and thus both Broderbund and The Learning Company became wholly owned subsidiaries of Mattel.

4. Mattel has incorporated AccuSoft's ImageGear technology into two of its software products, namely Pokémon Project Studio Blue and Pokémon Project Studio Red. Mattel has distributed the Pokémon software products throughout the United States.

## II. Conclusions of Law

In ruling on a motion for a preliminary injunction, this Court must consider whether the plaintiff has established that: 1) it has a substantial likelihood of success on the merits, 2) there exists, absent injunctive relief, a significant risk of irreparable harm, 3) the balance of hardship tilts in its favor, and 4) granting the injunction will not negatively affect the public interest. *TEC Engineering Corp. v. Budget Molders Supply Inc.*, 82 F.3d 542, 544 (1st Cir.1996). Those considerations are discussed *seriatim*.

### 1) *Likelihood of Success on the Merits*

AccuSoft alleges that Mattel is infringing its copyright of the sourcecode contained in ImageGear in violation of 17 U.S.C. § 106.

■ Computer programs are protected as "literary works" under the Copyright Act. *Computer Associates Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 702 (2d Cir.1992). AccuSoft has a registered copyright for ImageGear and, therefore, has the exclusive right to exclude others from copying, making derivative works, distributing or using the program for a specified amount of time. 17 U.S.C. § 106. To prevail on a claim of copyright infringement, a party must show: 1) ownership of a valid copyright, and 2) unauthorized copying of elements of the copyrighted work. *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir.1995). AccuSoft's ownership and the validity of its copyright are not contested. Therefore, AccuSoft's likelihood of success on the merits depends upon its ability to prove that Mattel made improper use of ImageGear.

■ AccuSoft alleges that Mattel is using the ImageGear program without a license in four of its products, not only Print Shop and Park Row, but also Pokémon Project Studio Blue and Pokémon Project Studio Red (collectively "the Pokémon software products"). AccuSoft claims that Mattel could not have acquired licensing rights to ImageGear by assignment from The Learning Company and/or Broderbund because AccuSoft did not consent in writing or otherwise to any such purported assignment as required by the License.

Mattel responds by differentiating between the two groups of allegedly infringing products: 1) Print Shop and Park Row, and 2) the Pokémon software products. With respect to the first group, Mattel notes that the Park Row product is now sold as "Print Shop Press Writer" and that Print Shop and Print Shop Press Writer (collectively "the Print Shop products") are manufactured and distributed by Broderbund under the License. Broderbund is not a party to this lawsuit, and Mattel argues persuasively that the Print Shop products are not relevant to this case.

With respect to the Pokémon software products, Mattel asserts that 1) it is no longer making the Pokémon software products, and 2) it believed that it had the right to make such products under the derivative works and sublicense rights that Broderbund had pursuant to the License. Those assertions are not persuasive.

Upon consideration of the License, this Court concludes that AccuSoft has, at this stage of the litigation, satisfied its burden of demonstrating a likelihood of proving unauthorized copying of ImageGear by Mattel. The License provides:

> This Agreement ... shall not be assignable by either party to any third party except with the prior written consent of the other party. In the event of a sale of all or substantially all of the assets of [Broderbund], then [Broderbund] agrees to seek consent from AccuSoft for assignability of this Agreement, which consent will not be unreasonably withheld.

(Warner Affidavit, *Exhibit B*, ¶ 11).

AccuSoft asserts that neither Broderbund nor the Learning Company ever sought its consent to assign Broderbund's ImageGear licensing rights to The Learning Company (Warner Affidavit, ¶ 21), and that it never consented to such an assignment (Warner Affidavit, 22). Similarly, AccuSoft contends that 1) neither The Learning Company nor Mattel ever requested permission to assign the ImageGear license rights, to the extent The Learning Company had any, to Mattel (Warner Affidavit, ¶ 23), and 2) it never consented to such an assignment (Warner Affidavit, ¶ 24). Thus, at no stage during the process by which Broderbund became a subsidiary of Mattel were the ImageGear license rights properly assigned to Mattel under the License. Accordingly, for the purpose of the pending motion for a preliminary injunction, the Court concludes that there is a substantial likelihood that Mattel never had, and does not now have, any right to use ImageGear in its products.

Alternatively, even if Mattel properly acquired ImageGear license rights by as-

signment from Broderbund, AccuSoft claims that Mattel infringed upon its copyright by extending the use of ImageGear technology beyond the scope of the License. The License permits Broderbund to use ImageGear in its Print Shop and Park Row applications only (Warner Affidavit, *Exhibit B*, Schedule B). Mattel has, however, apparently incorporated ImageGear technology into its Pokémon software products. By so doing, Mattel has exceeded the scope of the License and thus violated AccuSoft's copyright.

### 2) *Irreparable Harm*

■ In the copyright context, irreparable harm is presumed if the copyright holder has shown a likelihood of success on its infringement claim. *Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir.1988); *Green Book Int'l Corp. v. Inunity Corp.*, 2 F.Supp.2d 112, 124 (D.Mass.1998). Because AccuSoft has established a likelihood of success on the merits of at least part of its infringement claim, this Court presumes that it will suffer irreparable harm if an injunction does not issue.

### 3) *Balancing of Hardships*

The balance of hardships clearly falls in AccuSoft's favor. In the *Concrete Machinery* case, the First Circuit noted that "[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense 'merits little equitable consideration'." *Concrete Machinery*, 843 F.2d at 612 (quoting *Helene Curtis Industries v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1333 (7th Cir.1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978)). Because Mattel has stopped producing the Pokémon software products, it will suffer no hardship under the injunction other than lost profits on any Pokémon software products still in distribution.

Mattel contends that AccuSoft's reliance on the reasoning in the *Concrete Machin-*

*ery* decision, by itself, is insufficient to tip the balance of harms in AccuSoft's favor, but offers no support for such an assertion. Mattel then argues that it might suffer economic injury if its subsidiary (Broderbund) is barred from selling the Print Shop products but such a concern is irrelevant because, as noted *supra*, this preliminary injunction does not relate to the Print Shop products.

### 4) *Public Interest*

As with the irreparable harm factor, it is ordinarily presumed that an injunction will serve the public interest if the copyright holder shows a likelihood of success on the merits. *Concrete Machinery*, 843 F.2d at 612; *Green Book*, 2 F.Supp.2d at 124. Because AccuSoft has established a likelihood of success on the merits of its infringement claim, this Court presumes that issuance of a preliminary injunction is in the public interest.

### ORDER

For the reasons set forth in the Memorandum above, and until further order of the Court, it is hereby ordered that:

1) the preliminary injunction entered on September 6, 2000 (Docket No. 31) shall remain in effect; and

2) Defendant's motion to stay pending appeal (Docket No. 34) is DENIED.

So ordered.