**FORD MOTOR COMPANY; Jaguar Cars, Ltd.; and Aston Martin Lagonda Ltd., Plaintiffs–Appellants,**

v.

**LLOYD DESIGN CORPORATION, Defendant–Appellee.**

No. 00–2046.

United States Court of Appeals, Sixth Circuit.

Oct. 25, 2001.

Before SILER, CLAY, and GIBSON,* Circuit Judges.

CLAY, Circuit Judge.

Plaintiffs, Ford Motor Co. ("Ford"), Jaguar Cars ("Jaguar"), and Aston Martin Lagonda ("Aston Martin"), appeal from the district court's order denying their motion for a preliminary injunction in this action against Defendant, Lloyd Design Corp. ("Lloyd"), alleging trademark infringement under 15 U.S.C. § 1114, trademark dilution under 15 U.S.C. § 1125(c), false designation of origin or sponsorship and false advertising under 15 U.S.C. § 1125(a), and common law trademark infringement. We VACATE and REMAND.

---

* The Honorable John R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

## BACKGROUND

### Facts

Plaintiffs are automobile manufacturers. Plaintiffs Jaguar and Aston Martin are wholly owned subsidiaries of Plaintiff Ford. Ford has several registered trademarks in the mark Ford®. It also has registered trademarks in the marks "Bronco," "Excursion," "Expedition," "Explorer," "Lincoln," "Navigator," "Mercury," "Mustang," "Ranger," "Mountaineer," "Taurus," "Windstar," the "Ford Thunderbird Logo," "F–150," "F–250," "F–350" as well as others. Similarly, Jaguar has a registered trademark in the mark "Jaguar" and other related marks, and Aston Martin has a registered trademark in the mark "Aston Martin" and other related marks. Many of the trademarks in contention have been owned by Plaintiffs and registered without contention for five or more years, including "Ford," "Bronco," "Lincoln," "Mustang," "Jaguar," "Aston Martin," and others; however, certain other trademarks such as "F–250" have been in existence less than five years.

Plaintiffs have continuously used their trademarks in connection with the promotion, advertising, and sale of automobiles and automobile accessories and parts including floor mats. Plaintiffs claim to have spent billions of dollars and expended significant resources and efforts in developing their trademarks.

Without authorization and after Plaintiffs' trademarks became famous, Defendant began using Plaintiffs' trademarks in marketing its line of floor mats. Defendant prominently displays Plaintiffs' trademarks on the front of its floor mats. While there exists a disclaimer on the outside packaging of Defendant's floor mats disclaiming affiliation, sponsorship, or connection with Plaintiffs' mats, the only disclaimer on Defendant's mat itself is located on the bottom of the floor mat, which is not visible when the mat is in use. The disclaimer reads "No affiliation with, sponsorship with, or endorsement by any vehicle manufacturer is implied or expressed."

Defendant was apparently aware that the trademarks belonged to Plaintiffs. Defendant, however, chose to use the trademarks to increase the marketability of its products. Defendant sells its floor mats almost exclusively in western states, and has sold its floor mats to some of Plaintiffs' authorized automobile dealers in those states. Plaintiffs also sell floor mats bearing their trademarks in western states and also through many of the retailers used by Defendant, including Plaintiffs' authorized dealers. Therefore, Plaintiffs' floor mats are in direct competition with Defendant's floor mats. Defendant claims, however, that its floor mats are "thicker, more durable, better fitting and more costly than other mats." In other words, it contends that it produces "quality" mats.

Plaintiffs claim they learned of Defendant's use of their trademarks through a deposition taken in another lawsuit against Defendant in Georgia captioned *Porsche Cars North America, Inc. v. Lloyd Design Corp.*, Civil No. 1:99–CV–1560 (N.D.Ga.). (J.A. at 21–24.) Plaintiffs learned of the deposition in May of 2000. They filed the instant lawsuit and motion for a preliminary injunction in June of 2000. Defendant contends that it has used the challenged trademarks on its own floor mats since 1987. It claims that Plaintiffs knew about its use, and until they filed the instant suit, essentially sat on their rights to enforce the trademarks.

### Procedural History

The procedural history of this case is somewhat unique. We explain it in detail so that there is no confusion as to the issues that are before us on this appeal.

Plaintiffs filed a verified complaint in the district court and simultaneously moved for a preliminary injunction against Defendant's use of their marks. After a hearing on Plaintiffs' motion for preliminary injunction, the district court, the Honorable Bernard Friedman presiding, issued an order denying the motion on August 29, 2000. Plaintiffs filed a notice of appeal on September 1, 2000 with this Court, as well as a motion with the district court for an injunction pending appeal and expedited hearing on that motion. The district court did not act on Plaintiffs' motion for an injunction pending appeal. Plaintiffs therefore filed a motion with this Court for an injunction pending appeal and for expedited briefing. In an order issued October 26, 2000, this Court ordered the district court to issue a ruling "forthwith" on Plaintiffs' motion for an injunction pending appeal. *Ford Motor Co. v. Lloyd Design Corp.*, No. 00–2046 (6th Cir. Oct. 26, 2000).

On December 7, 2000, after this case was transferred from Judge Friedman to the docket of the Honorable Victoria A. Roberts, the district court issued an order granting Plaintiffs' motion for injunction pending appeal. On January 18, 2001, this Court denied a motion by Defendant for a stay of enforcement of the district court's December 7, 2000 order.

In rendering her decision on the injunction pending appeal, Judge Roberts made factual and legal determinations regarding Plaintiffs' claims. She used the same factors in rendering her decision that are used to rule on a motion for preliminary injunction in the first instance.[1] In doing so, Judge Roberts determined that Plaintiffs had established a strong likelihood of

success on the merits of their trademark infringement claims and that the balance of hardships favor Plaintiffs. In short, Judge Roberts reached the opposite result with respect to Plaintiffs' entitlement to a preliminary injunction than did Judge Friedman.

The order before this Court, however, is Judge Friedman's August 29, 2000 order denying Plaintiff's motion for a preliminary injunction, which we shall now address.

## DISCUSSION

This Court reviews a district court's order denying a motion for preliminary injunction for abuse of discretion. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir.1985). As to motions for preliminary injunctions in trademark infringement cases, the critical issue of whether there is likelihood of confusion is a matter subject to *de novo* review. *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 422 (6th Cir.1999). However, the factual findings underlying the court's determination of likelihood of confusion are reviewed for clear error. *Id.*

On appeal, Plaintiffs contend that the district court erred in denying their motion for a preliminary injunction. They argue that the district court erred in determining that (1) they did not have a strong likelihood of success on the merits of their trademark infringement and dilution claims; and (2) the absence of a preliminary injunction would not cause Plaintiffs' irreparable harm. They further claim that the district court failed to make factual findings to support its basis for denying the preliminary injunction.

---

1. *See Lehnert v. Ferris Faculty Ass'n–MEA– NEA*, 707 F.Supp. 1490, 1492 (W.D.Mich. 1989) (explaining that "[i]n deciding whether to grant an injunction pending appeal, the court must balance the same factors as in evaluating a motion for a preliminary injunction") (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir.1987); *Accident Fund v. Baerwaldt*, 579 F.Supp. 724, 725 (W.D.Mich.1984)).

Defendant argues that the district court properly determined that Plaintiffs likely would not succeed on the merits of their claims because Defendant has strong affirmative defenses to each of the claims. Defendant further argues that the district court did not err in concluding that there would be no irreparable harm because Plaintiffs could recover money damages if they ultimately won the lawsuit. They also argue that the factual support for the district court's ruling was sufficient.

When determining whether a preliminary injunction should issue, the district court should consider (1) the movant's likelihood of success on the merits; (2) whether irreparable injury would result from failure to issue an injunction; (3) whether the preliminary injunction could harm Defendant or third parties; and (4) whether the public interest would be served by issuing the preliminary injunction. *United States v. Szoka*, 260 F.3d 516, 523 (6th Cir.2001) (citing *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross & Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir.1997)). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 400 (6th Cir.1997) (citing *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994)). No single factor is dispositive. *Id.* Further, "the district court's weighing and balancing of the equities is overruled only in the rarest of cases." *Id.* (internal quotation marks and citations omitted).

In applying the four factors, district courts must "set forth findings of fact and conclusions of law which constitute grounds for its action." Fed.R.Civ.P. 52(a); *Six Clinics*, 119 F.3d at 399 (explaining that a "[a] district court is required to make specific findings concerning each of the four factors, unless fewer

factors are dispositive of the issue"). As we have explained,

> a finding that a movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at a minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued.

*Id.* at 399–400 (citation, internal quotation marks, and alteration omitted); *Frisch's*, 759 F.2d at 1263 (affirming district court's denial of preliminary injunction after lower court only considered the movant's likelihood of success on the merits); 42 Am. Jur.2d *Injunctions* § 268 (specific findings required as to each factor, unless balancing fewer factors will suffice) (citation omitted); *see also Deal v. Cincinnati Bd. of Educ.*, 11 Ohio Misc. 184, 369 F.2d 55, 63 (6th Cir.1966) (under Rule 52(a), district court's findings "should be both 'comprehensive and pertinent to the issues to provide a basis for decision'") (citing *Schilling v. Schwitzer–Cummins Co.*, 142 F.2d 82, 84 (D.C.Cir.1944); *Shapiro v. Rubens*, 166 F.2d 659 (7th Cir.1948)). "The requirements of Rule 52(a) are intended to assure that the district court gives appropriate consideration to all essential relevant factors and provides an adequate basis for meaningful appellate review of its decision." *TEC Eng'g Corp. v. Budget Molders Supply, Inc.*, 82 F.3d 542, 545 (1st Cir.1996) (citing 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2571, at 478–80 (2d ed.1994) (findings must be based on something more than a one-sided presentation of the evidence, and the court must weigh and appraise the evidence offered by both parties impartially)).

468

We agree with Plaintiffs that the district court failed to make necessary factual findings or conclusions of law to support its denial of the preliminary injunction. While the district court in some respects explained its rationale for denying the preliminary injunction, the district court made no findings of fact or conclusions of law, either at the hearing or in its order, except that it concluded a preliminary injunction was not warranted.

In a trademark infringement case, the central issue "is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (2000). This circuit has articulated eight factors to guide courts in determining whether likelihood of confusion exists. *Id.* They are: (1) strength of the plaintiff's marks; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent in selecting the mark; and, (8) likelihood of expansion of the product lines. *Id.* "A party claiming infringement need not show all, or even most, of these factors in order to prevail." *Esercizio, v. Roberts*, 944 F.2d 1235, 1242 (6th Cir.1991) (citing *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988)). Moreover, a likelihood of confusion is presumed when a defendant intentionally copies a trademark design "with the intent to derive a benefit from the reputation of another." *Id.* at 1243 (citing *Zin–Plas Corp. v. Plumbing Quality AGF Co.*, 622 F.Supp. 415, 420 (W.D.Mich. 1985)).

The district court made no factual findings with regard to whether Defendant's use of Plaintiffs' trademarks creates a likelihood of confusion. The record is devoid of any reference by the district court as to its factual basis with regard to whether there exists a likelihood of confusion at all. Such an inquiry is key in a trademark infringement action as it goes to the heart of whether a plaintiff can show success on the merits. *Kellogg*, 209 F.3d at 568. In one of the few instances that the district court specifically mentioned Plaintiffs' likelihood of success, it stated,

> In this particular matter, again, I never pretend or want to interfere with the trier of fact in terms of success, but I think that this one has some very strong issues in terms of defense issues, and I say that only because most of the time most of the issues are very strong plaintiff's issues and I don't say that in terms of strength in relation to this particular case but strength in relation to other cases that I have seen; as I say, the knockoff watches, the knockoff T-shirts that we get all of the time whenever there's a concert in town, you know, things like that. I'm not saying these are strengths in terms of this case, I'm just saying strength in terms of other cases and what I see on a regular basis. But taking all of those kinds of things into consideration in terms of likelihood of success, I think it's not as strong as other cases.

(J.A. at 891.) Defendant points to random statements by the district court throughout the transcript to show that specific factual findings as to Plaintiffs' likelihood of success and other issues were, in fact, made. However, the district court's own statements belie Defendant's position. The district court specifically stated that in rendering its decision, it was "not making any factual ... [or] real legal determinations." (J.A. at 896.) It just "formed enough opinions to know whether or not [it] should issue a preliminary injunction." *Id.* The district court failed to employ the eight factors used in this circuit to determine likelihood of confusion, or otherwise

specifically delineate any facts explaining whether there was a likelihood of success on the merits. It made no conclusions of law on the issue at all.

With regard to irreparable harm, the district court appeared to conclude that Plaintiffs would suffer no irreparable harm if it denied the injunction because of "allegations . . . in terms of the quality" of Defendant's floor mats. (J.A. at 891–92.) The district court also appears to have concluded that because Plaintiffs may receive money damages at trial, they did not show harm. According to the district court: "I think that any damages, if there are damages, can be equated to dollars, even treble damages in terms of dollars should the need arise." (J.A. at 892.) However, where a plaintiff makes a strong showing of likelihood of confusion, irreparable harm follows as a matter of course. See Wynn Oil Co. v.. Am. Way Serv. Corp., 943 F.2d 595, 608 (6th Cir. 1991) (citations omitted). Because the district court failed to make specific findings with regard to the issue of likelihood of confusion, it did not determine whether irreparable harm would flow therefrom. Moreover, while the district court found Defendant's defenses to Plaintiffs' claims "strong," it made no findings with regard to any of those defenses.

The district court obviously believed itself constrained in ruling on Plaintiffs' motion because the case was going to be transferred to another judge. The district court stated: "Judge Roberts will be taking this case because she has come back from Bay City. . . . So that's another reason why I say [deny the preliminary injunction motion] without prejudice. Certainly I wouldn't want to interfere at this stage with her rulings." (J.A. at 894–95.) However, the findings of a district court in the context of a preliminary injunction "do not bind the court in subsequent proceed-ings." TEC, 82 F.3d at 545 (citing Aoude v. Mobil Oil Corp., 862 F.2d 890, 895 (1st Cir.1988)); see also Six Clinics, 119 F.3d at 400 ("findings of fact and conclusions of law made by a district court in granting a preliminary injunction are not binding at a trial on the merits"). Thus, the district court should have made findings "both comprehensive and pertinent to the issues upon which it ruled to provide a basis for decision." Deal, 369 F.2d at 63. The record fails to reflect such findings.

Rule 52(a)'s mandate that the courts set forth findings of fact and conclusions of law serves two purposes, it "aids 'the appellate court by affording it a clear understanding of the ground or basis of the decision of the trial court' . . . [and, it] encourages the trial judge to ascertain the facts with due care to render a decision in accord with the evidence and the law." Inverness Corp. v. Whitehall Laboratories, 819 F.2d 48, 50 (2d Cir.1987) (per curiam) (citation omitted). We cannot without resorting to speculation determine the basis on which the district court rested its decision not to grant the preliminary injunction in this case. In such instances, the appropriate procedure is to vacate the decision of the district court and remand for an explanation of its decision. Id.; TEC, 82 F.3d at 545 (remanding case where court would have to resort to speculation to determine the basis for the district court's decision); 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2577, at 514 (appellate courts "may vacate the judgment and remand the case to the district court for findings if the trial court failed to make findings" required by rule 52(a) (footnote citations omitted)).

As explained earlier, after this case was transferred in the district court, Judge Roberts granted Plaintiffs' motion for injunction pending appeal. She applied the

same standards used to adjudge whether a preliminary injunction should issue in the first instance, and her decision contained factual and legal determinations. However, inasmuch as Judge Roberts did not issue a preliminary injunction, but merely an injunction pending appeal, and her order is not before us on appeal, we must remand. On remand, we instruct Judge Roberts, on an expedited basis, to consider Plaintiffs' motion for preliminary injunction. In doing so, Judge Roberts should determine whether her previously issued order should be expanded into a preliminary injunction and whether additional factual findings are deemed necessary or appropriate.

## CONCLUSION

Because the district court failed to make the necessary findings of fact and conclusions of law to support its decision to deny the motion for preliminary injunction, we VACATE the judgment of the district court denying the preliminary injunction and REMAND. On remand, the district court is instructed forthwith to consider Plaintiffs' motion for preliminary injunction consistent with this opinion. Any further appeals regarding the granting or denying of a preliminary injunction should come back before this panel as presently constituted.