**Alma MATOS, by and through her parent and next friend, Juan Matos, Plaintiff,**

**v.**

**CLINTON SCHOOL DISTRICT, Edward Philbin, in his official capacity as Superintendent, Gerald Gaw, individually and in his official capacity as Principal, James Hastings, individually and in his official capacity as Assis-**

tant Principal, Marguerite Foley, individually and in her official capacity as Teacher, Joanne Gavin, individually and in her official capacity as National Honor Society Adviser for the Clinton High School, Defendants.

No. CIV.A. 03–40010NMG.

United States District Court,
D. Massachusetts.

Feb. 11, 2003.

David E. Ashworth, Guaetta and Benson LLP, Chelmsford, MA, for Alma Matos, Plaintiff.

Beverly B. Chorbajian, Worcester, MA, for Alma Matos, Plaintiff.

Thomas F. McEvilly, Leominster, MA, for Marguerite Foley, Defendant.

Nancy Frankel Pelletier, Robinson Donovan, PC, Springfield, MA, for Clinton School District, Edward Philbin, Gerald Gaw, James Hastings, Joanne Gavin, Marguerite Foley, Defendants.

Dennis P. Sargent, Law Offices of Sargent & Williamson, Clinton, MA, for Clinton School District, Defendant.

## MEMORANDUM & ORDER

GORTON, District Judge.

This is a suit brought on behalf of a high school student who was suspended

after she typed into a computer and printed out derogatory remarks about her teacher that the student intended to keep private but while she was participating in a class exercise. Pending before this Court is plaintiff's application for a preliminary injunction to prevent the defendant School District from disseminating any information about the plaintiff's suspension until after the case can be heard on the merits.

## I. Factual Background

The relevant facts are in considerable dispute. On December 18, 2002 plaintiff Alma Matos ("Matos"), a twelfth grade student at Clinton High School, was suspended for ten days by the school administration. Matos, while typing a class assignment on a school computer in her Journalism class taught by defendant Marguerite Foley ("Foley"), composed and printed offensive remarks about Foley and defendant Principal Gerald Gaw ("Gaw"). Matos printed those remarks and placed them in her "personal journal". The teacher saw the conduct and asked to see the paper. When Matos refused to show her, Foley took the assignment from Matos. When Matos took the assignment back from Foley, the teacher told her to report to Gaw's office. Matos complied.

According to Matos, after she arrived in the Principal's office, Gaw read the offending paper which stated, among other things, that Foley and Gaw were sleeping together. Gaw sent for Matos's mother, who works in or very near the same building and, after the mother arrived, informed them both that Matos would be suspended for ten school days. No written notification of her suspension was given until January 6, 2003.

Matos filed suit in this Court against the defendants, the Clinton School District and various officials employed by the District, on January 14, 2003. Her complaint contains ten counts, including claims for intentional infliction of emotional distress, violations of the Massachusetts Civil Rights Act, and violations of Matos's constitutional rights of free speech, privacy, due process and equal protection. Matos seeks a preliminary injunction that would:

1) require defendants to expunge from her school records any reference to the suspension until defendants comply with due process requirements and internal school regulations;

2) enjoin defendants from notifying colleges to which she has applied for admission of the suspension;

3) require the defendants to vacate the suspension and allow her to return to school immediately;

4) enjoin defendants from altering the contents of the computer on which Matos was working at the time of the alleged incident; and

5) enjoin defendants from taking any adverse action regarding her status as a member of the National Honor Society.[1]

On January 17, 2003, after an ex parte hearing on Matos's motion for a temporary restraining order ("TRO"), this Court orally entered a Bench Order allowing the relief requested in subparagraphs 2, 4 and 5 above. On January 24, 2003, after a second hearing at which both parties were represented but defendants were unprepared to argue the merits of the motion, this Court entered, with the agreement of the parties, a written TRO which extended

---

1. Request No. 3 is now moot because the suspension was completed on January 14, 2003.

the earlier order until "further notice from this Court". On February 6, 2003, this Court heard oral arguments on the merits of Matos's application for a preliminary injunction.

## II. Legal Analysis

Pursuant to Fed.R.Civ.P. 65, a district court exercises broad discretionary power to grant or deny preliminary injunctions. In ruling on the pending motion for a preliminary injunction, this Court must consider whether Matos has established that: 1) she has a substantial likelihood of success on the merits, 2) there exists, absent injunctive relief, a significant risk of irreparable harm to Matos, 3) the balance of hardship tilts in her favor, and 4) granting the injunction will not negatively affect the public interest. *See, e.g., Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996); *TEC Engineering Corp. v. Budget Molders Supply Inc.,* 82 F.3d 542, 544 (1st Cir.1996).

The last three factors are relatively easy to analyze in this case. The potential for irreparable harm to the plaintiff if colleges are notified about a suspension that is later expunged is obvious. Conversely, the burden on the defendants of an injunction would be relatively minor because Matos has already served her ten-day suspension and it would cost the defendants very little in time or resources to otherwise preserve the status quo. Furthermore, the requested injunction would have little or no impact on any public interest. Those three factors, therefore, clearly weigh in Matos's favor. The remaining and most important factor, however, is whether Matos has a substantial likelihood of succeeding on the merits of her federal

law claims and that is a much closer question.[2]

## A. Due Process of Law

■ Matos argues that she was denied due process of law because, prior to her suspension, she was not afforded appropriate written notice of the suspension and was not given the opportunity to challenge the accuracy of the facts that led to her suspension. In response, defendants argue that Matos was afforded due process of law because, in accordance with the requirements espoused by the Supreme Court in *Goss,* 419 U.S. at 581–82, 95 S.Ct. 729, plaintiff was afforded (1) oral notice of the charges against her, (2) an explanation of the evidence and (3) an opportunity to present her side of the story.

The United States Supreme Court held in *Goss* that a student's right to public education is a property interest that is protected by the Due Process Clause. *Id.* at 574, 95 S.Ct. 729. A student facing suspension, therefore, at the very minimum "must be given *some* kind of notice and afforded *some* kind of hearing." *Id.* at 579, 95 S.Ct. 729. The Supreme Court held that students suspended for ten days or less are entitled to oral or written notice of the charges and, if the student denies those charges, an explanation of the evidence against him and an opportunity to present his side of the story. *Id.* at 581, 95 S.Ct. 729. Significantly, the Supreme Court recognized that in the majority of cases the "disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." *Id.* at 582, 95 S.Ct. 729. In so finding, the Supreme Court held that there need be no delay between the time notice is given and

---

**2.** Plaintiff addresses neither her equal protection claim nor most of her state law claims in her application for a preliminary injunction and, because this Court would decline jurisdiction over the entire case if the federal claims were later dismissed, its analysis is confined to plaintiff's remaining federal law claims.

the time of the hearing. So long as the student is first informed of the accusations, presented with the evidence against him and given an opportunity to state his version of the facts, due process requirements are met. *Id.*

Although the defendants actions here were hasty and perhaps even ill-advised as a policy matter, it is likely that a jury will find that they complied with the minimal due process requirements of *Goss.* Matos clearly had notice of her alleged misconduct and the evidence supporting it. She has failed to show that she was not given an opportunity to explain her version of the events before she was suspended. Indeed, taking the facts in her complaint and supporting affidavits as true, it is very likely that she had ample opportunity to explain her side of the story, because, according to the complaint, defendants did not suspend Matos until after her mother had been summoned to, and arrived at, Gaw's office. Furthermore, defendants contend that Matos had an opportunity to explain her actions to both Gaw and defendant Assistant Principal James Hastings before she was suspended and Matos's complaint and affidavits do not refute that contention. Therefore, Matos has not demonstrated a likelihood of success on the merits of her due process claim.

## B. Fourth Amendment

■ Matos argues that she was deprived of her constitutional right not to be subjected to an unreasonable search. The Fourth Amendment protects students from unreasonable searches by public school officials. *See New Jersey v. T.L.O.,* 469 U.S. 325, 333, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). An expectation of privacy that a student has at school, however, must be balanced by the state's "substantial" interest in maintaining discipline on school grounds. *Id.* at 339, 105 S.Ct.

733. Consequently, whether the search of a student is legal depends upon its reasonableness under the circumstances. *Id.* at 341–42, 105 S.Ct. 733. Whether a search is justified depends, in part, upon whether it is reasonable to believe that the search will yield evidence that the student has violated the law or a rule of the school. *Id.*

It is likely that a jury will find that Matos had no reasonable expectation of privacy in the subject statement. That statement was written in response to a school assignment on a school computer and printed on a school printer, all in plain view of Foley and her classmates. Furthermore, it is customary for the teacher to review class assignments for feedback and grading after the students print them. Under these circumstances, the fact that plaintiff put the assignment in her personal journal, as she alleges, or on her desk partially underneath the journal, as defendants allege, is of no constitutional import.

Assuming *arguendo* that plaintiff had a reasonable expectation of privacy in the paper, the "search" was very likely warranted under the circumstances because it was reasonable for the teacher to believe, once Matos refused to show her the paper, that Matos had violated a school policy by using the computer for a "non-school-related purpose" and that the teacher was therefore entitled to take possession of the paper. Matos clearly has not demonstrated a likelihood of success on the merits of her Fourth Amendment claim.

## C. First Amendment

Matos's claim that she was denied her right to privacy under the First Amendment is wholly unsupported and therefore she has not demonstrated a likelihood of success on the merits of her First Amendment claim.

### Conclusion

Matos has failed to satisfy her burden of establishing a likelihood of success on any of her claims over which this Court chooses to exercise subject matter jurisdiction and her application for a preliminary injunction will, therefore, be denied.

### ORDER

For the foregoing reasons, Matos's application for a preliminary injunction (Docket No. 11) is **DENIED.**

So ordered.