# United States Court of Appeals
## For the First Circuit

No. 14-2324

ARBORJET, INC.,

Plaintiff, Appellee,

v.

RAINBOW TREECARE SCIENTIFIC ADVANCEMENTS, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Selya, Circuit Judge,
Souter,* Associate Justice,
Lipez, Circuit Judge.

July 16, 2015

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

Scott P. Lopez, with whom Joshua M. D. Segal and Lawson & Weitzen, LLP were on brief, for appellant.

Kristen S. Scammon, with whom Michael S. Day and Torres, Scammon & Day, LLP were on brief, for appellee.

**SOUTER**, **Associate Justice.** This appeal challenges a preliminary injunction meant to enforce a contractual agreement and prohibit a trademark violation. We affirm in part and reverse in part.

## I.

Plaintiff-Appellee Arborjet, Inc. manufactures and sells TREE-age, an emamectin benzoate solution used to protect trees from various pests. Through the period from August 2008 to February 2013, Arborjet granted Defendant-Appellant Rainbow Treecare Scientific Advancements, Inc. an exclusive right to distribute TREE-age. Their sales agency contract included this provision:

> [Rainbow] agrees, in view of the confidential information regarding Arborjet's business affairs, plans, and necessities, that [Rainbow] will not engage in affairs intended to replicate [A]rborjet's products or processes.

After the termination of this agreement, Rainbow began marketing and distributing ArborMectin, another emamectin benzoate combination meant to compete directly with TREE-age. Arborjet sued Rainbow in Massachusetts trial court, seeking to enjoin Rainbow's sales of ArborMectin and claiming breach of contract, breach of implied covenant of good faith and fair dealing, false

- 3 -

advertising under the Lanham Act and Massachusetts law, 15 U.S.C. § 1125(a)(1)(B); Mass. Gen. Laws ch. 266, § 91, false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and common law unfair competition. Rainbow removed the action to federal court.

In the preliminary injunction proceedings from which this appeal comes, the district court did not find for Arborjet on the prospects of its Lanham Act or state law tort and statutory claims, but it did find likely success on those for breach of contract and implied covenant of good faith and fair dealing. The court said that Arborjet had "demonstrated a likelihood that it will be able to prove that [Rainbow] engaged in research and development to create a product very similar to TREE-age," in violation of the sales agency agreement. In summarizing the support it found for this conclusion, the court described ArborMectin as the "defendant's own . . . product" and stated that "Rainbow's website describes partnering with several institutions and companies to conduct research studies regarding ArborMectin's effectiveness," at least one of which "took place while Rainbow was . . . subject to the terms of the [sales agency a]greement." The district court accordingly granted Arborjet an injunction to run during the litigation, with a principal order that "[Rainbow]

- 4 -

and those acting in concert with it . . . immediately cease and desist selling, distributing and/or marketing ArborMectin."

## II.

We start with the state law contract claims and a word about the deferential standard of review: whether the district court abused its discretion in issuing the preliminary injunction addressing breach of those obligations. See TEC Eng'g Corp. v. Budget Molders Supply, Inc., 82 F.3d 542, 544–45 (1st Cir. 1996). Thus, we may "set aside [the district court's] ruling only if . . . persuaded that [it] mistook the law, clearly erred in its factual assessments, or otherwise abused its discretion in granting the interim relief." McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001). Our review recognizes "the preliminary nature of the proceeding; in the context of a preliminary injunction motion, the district court's findings need not be overly detailed, and they do not bind the court in subsequent proceedings." TEC Eng'g Corp., 82 F.3d at 545; see also Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991) ("[A] party losing the battle on likelihood of success may nonetheless win the war at a succeeding trial on the merits.").

To grant a preliminary injunction, a district court must find the following four elements satisfied: (1) a likelihood of

success on the merits, (2) a likelihood of irreparable harm absent interim relief, (3) a balance of equities in the plaintiff's favor, and (4) service of the public interest.  See Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  The second through fourth considerations are not disputed, so we focus solely on likelihood of success, and find no abuse of discretion in the conclusion that Arborjet was likely to succeed on its contract claims.[1]

Rainbow argues first that it was clear error to find a likely showing that it contributed to the creation of ArborMectin, contending that the record undisputedly shows that a different company, Rotam, created ArborMectin on its own.  The evidence before the district court, however, was not nearly as one-sided as Rainbow says.  To be sure, the Environmental Protection Agency (EPA) lists Rotam as the approved creator of ArborMectin, but the question is whether Rainbow contributed to its creation.  And, on that point, the district court was presented with two e-mails from

---

[1] The district court treated claims based on the express terms and the implied covenant of good faith dealing together, and none of the authorities cited by Arborjet provide any basis for treating them differently here.  We need not reach the implied covenant claim because we affirm as to the written terms.

- 6 -

a Rainbow sales representative describing ArborMectin as Rainbow's own product, and truly undisputed evidence that Rainbow conducted at least ten studies across the United States on the effectiveness of ArborMectin, some of them years before Rotam submitted its formula to EPA for approval. It was certainly plausible, then, for the court to infer that Rainbow played a role in the product's creation. Although Rainbow counters that the statements were false and that its studies were merely the practices of a sensible distributor, these arguments at best show only that, if the court had accepted them, it could reasonably have reached the opposite conclusion. But "where the facts can support two plausible but conflicting interpretations of a body of evidence, the factfinder's choice between them cannot be clearly erroneous." deBenedictis v. Brady-Zell (In re Brady-Zell), 756 F.3d 69, 72 (1st Cir. 2014).

Next, Rainbow argues that the district court fell into legal error when it interpreted the contractual language quoted earlier. Rainbow cites a dictionary definition of "replicate" to contend that "affairs intended to replicate" applies only to efforts to produce a compound that would be an exact copy of TREE-age. Thus, Rainbow concludes, the contractual prohibition does

not apply to the development of ArborMectin, which both parties understand to differ from TREE-age in toxicity and other details.

The district court considered and rejected this argument, in faithfully applying Massachusetts contract law that "[t]he words of a contract must be considered in the context of the entire contract rather than in isolation." Brigade Leveraged Capital Structures Fund Ltd. v. PIMCO Income Strategy Fund, 995 N.E.2d 64, 69 (Mass. 2013) (internal quotation marks omitted). The phrase at issue here ("will not engage in affairs intended to replicate [A]rborjet's products") is prefaced by language indicating Arborjet's concern about guarding information not available to the public and potentially damaging if disclosed to competitors ("in view of the confidential information regarding Arborjet's business affairs, plans, and necessities"). Accordingly, the prohibition was probably aimed at preventing efforts by Rainbow to place Arborjet at a competitive disadvantage, reflecting a concern broader than the mere creation of an exact copy.[2] That said, we need not determine here the exact scope of

---

[2] Another point casts further doubt on Rainbow's reading: at the date of the contract, the active agent in TREE-age was apparently under patent protection. See Rainbow's Memorandum of Law in Opposition to Motion for Preliminary Injunction at 1, No. 14-cv-14129 (D. Mass. filed Nov. 18, 2014), ECF No. 17 (stating that ArborMectin was created after the patent on emamectin benzoate

the generally worded prohibition; for now it is enough to say simply that the dictionaries do not confine "replicate" to exact duplication, and Rainbow's claims of superiority for "our" product (which Rainbow extensively tested) raise a likelihood that Rainbow will be shown to have made efforts to develop ArborMectin as a competing product in violation of the contractual restriction during the contract period. For that matter, common sense suggests that, if the parties had an object as narrow as Rainbow claims, they would have written clearer language specific to that aim. See id. at 70 ("Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." (internal quotation marks omitted)). Thus the district court did not abuse its discretion in entering the portion of the preliminary injunction based on Arborjet's contract claim.[3]

---

expired). If that is true, it seems highly unlikely (albeit not impossible) that Arborjet would include a contractual prohibition on exact copies only, as the patent laws already saw to that.

[3] Rainbow initially argued that the injunction must be vacated because it has no limit on time. Rainbow appears to have wisely backed away from that argument, as the preliminary nature of the injunction ensures that it will be limited to the duration of the present litigation.

Rainbow challenges a second term of the injunction, not yet discussed:

> [Rainbow] and those acting in concert with it shall properly attribute Arborjet's trademarks "Arborjet" and "TREE-age" by appending the ® symbol to those marks and a footnote stating "Registered Trademark of Arborjet, Inc."

Rainbow objects that ordering proper attribution of "Arborjet" and "TREE-age" was improper given the district court's rulings on the Lanham Act claims.

Here we agree with Rainbow. This provision apparently responded to Arborjet's claim of "false designation of origin" under the Lanham Act. 15 U.S.C. § 1125(a)(1)(A). Arborjet alleged that Rainbow failed to attribute Arborjet trademarks properly in Rainbow communications, that failure of proper attribution was likely to cause consumer confusion, and that such likelihood of confusion demonstrated Rainbow's violation of § 1125(a)(1)(A). Rainbow's opposition papers disputed that any improper attribution would cause consumer confusion. Thus, according to the district court filings, it would appear that the grant of preliminary injunctive relief, so far as ordering Rainbow to attribute Arborjet

trademarks properly, responded to the allegedly false designation of origin.

The problem, however, is that the district court concluded that Arborjet was not likely to succeed on this claim. Indeed, it said that the evidence on this point "weigh[ed] against a finding of a likelihood of confusion." This was fatal to the request for an injunctive order for trademark designation. In this circuit, proving likelihood of success on the merits is the "sine qua non" of a preliminary injunction. New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). "[I]f the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." Id.

In its effort to defend this portion of the preliminary injunction, Arborjet contends that the district court did not grant such relief under the Lanham Act claim but rather to give effect to a binding stipulation made by Rainbow in the course of the proceedings. The record is otherwise, however.

As mentioned earlier, Arborjet's complaint contained many claims. To support its false advertising claims, it alleged that Rainbow's representations of ArborMectin as "improved TREE-age" may mislead customers into thinking that ArborMectin was

- 11 -

produced by Arborjet.  At the November 2014 preliminary injunction hearing, the district court appeared to share that concern, and it ended the hearing by strongly encouraging the parties to "come to some mutual middle ground."  Shortly after, Rainbow submitted a letter indicating that it had "made an offer to Arborjet that [it] will not make future advertising or marketing statements that ArborMectin is 'improved TREE-age'" and that, even though the case had not settled, Rainbow "agree[d] to voluntarily comply with its proposal."  The district court treated that submission as a "binding stipulation."

As this procedural recounting demonstrates, the stipulation does not support the preliminary injunction.  The stipulation appears to relate to the false advertising claim,  and it was in the false advertising portion of its findings that the district court mentioned the agreement and spoke of it as a binding stipulation.  The preliminary injunction, however, probably relates to the false designation of origin claim, for the reasons explained earlier.  Yet, even as to the false advertising claim, the court made no finding of likelihood of success, stipulation or no stipulation.  What is more, even if we were to look to the stipulation as authority for this provision of the injunction, the support would come up short, for the stipulation is limited to the

use of a two-word phrase in marketing materials, whereas the preliminary injunction mandates Rainbow's attribution of Arborjet trademarks across the board. Hence, we do not believe this term of the preliminary injunction merely effectuates Rainbow's stipulation. The upshot is that this portion of the order must be vacated, being unsupported by a finding of likely success on a relevant claim. New Comm Wireless Servs., 287 F.3d at 9.

IV.

The order comprising the preliminary injunction is affirmed in part, and reversed in part. Each party shall bear its own costs.